THE MICHIGAN FIRE AND MARINE INSURANCE COMPANY v. WICH.

1. INSURANCE—APPLICATION.

When a policy of insurance has been issued without a written application and without an agreement to execute one afterwards, the liability of the insurer is not defeated by the terms or conditions of an application subsequently delivered.

2. IMMATERIAL ERROR.

Unless it can be seen that the exclusion of testimony, even though competent, was harmful to the appellant, the error will not afford a basis for reversal of the judgment.

3. EVIDENCE—DECLARATIONS OF AGENTS.

If the agents of an insurance company deliver a policy without an application therefor, trusting a third party to procure one subsequently, his statements concerning the conditions under which the insurance was made are admissible against the company.

4. INSURANCE—INSURABLE INTEREST.

The equitable owner of property has an insurable interest therein.

5. SAME—LIMITATION TO AGENT'S AUTHORITY.

It seems that a limitation to an insurance agent's apparent authority is not available to the company against a policy holder, unless the latter had actual knowledge of the limitation or there was something in the circumstances which would bring it to his attention.

6. APPELLATE PRACTICE—ABSTRACTS.

If a document, the refusal to admit which in evidence is assigned as error, is not put in the abstract, it will be assumed that the assignment is not well laid.

7. EVIDENCE—IMPEACHMENT OF WITNESSES.

Declarations contained in an affidavit made by a witness at another time are not admissible for purposes of impeachment, without first spe-

cifically calling his attention to it and affording an opportunity to
explain the statements to be used to contradict him.

8. SAME—REFRESHING RECOLLECTION.

Witnesses may be permitted to refresh their recollection by referring
to memoranda made by them directly after the occurrence of the
event to which their testimony relates, and to testify from their
recollection thus refreshed.

9. APPELLATE PRACTICE.

No one is permitted to challenge the correctness of a ruling made upon
his own motion.

*Appeal from the District Court of Arapahoe County.*

Mr. CHARLES J. HUGHES, JR., and Mr. TYSON S. DINES,
for appellant.

Mr. STUART D. WALLING and Mr. C. M. BICE, for appellee.

BISSELL, J., delivered the opinion of the court.

This is evidently one of a series of suits brought by the
same plaintiff against various insurance companies to recover
the loss resulting from the destruction of a brewery property
in 1889.  The insurance was taken out at the same time, to
wit, early in February, 1889, through the insurance agency
of Perkins, Hart & Co., of Denver.  The total amount of
insurance was $15,000, a part of which was represented on
policies issued by the companies of which this firm were the
representatives, and part of it by policies which that firm
procured through Packard & Piper, the representatives of
the other corporations.  The plaintiff is the same in the dif-
ferent actions.  Probably the companies all concurred in con-
testing the validity of the policies, and it would presumably
be ample for us to refer to the antecedent suit for a statement
of the facts which have been developed by the litigation.  To
make the present appeal intelligible, however, we shall briefly
set forth some of the most salient features of the controversy,
point out the difference between the situation in the present
case and that existing when the other case was before us,
though referring generally to it and to the opinions therein

for a complete history of the litigations and for a more elaborate statement of the law. The other case is *The Sun Fire Office v. Wich*, wherein two opinions were written. They are found in the sixth volume of the Court of Appeals Reports, at page 103. The property involved was a brewery situated at Florence. It was bought in the latter part of 1888 by Wich, who negotiated the purchase and paid the owner therefor $4,000 in cash and gave a mortgage for a little upwards of $8,000 for the unpaid portion of the purchase money. The title was taken in the names of Wich, Ell, Voght, and Hess, who joined with Wich in giving the notes which represented the unpaid portion of the purchase money. The principal contention and the real basis for the reversal of the judgment which Wich got against the Sun Fire Office turned on the proof respecting this particular matter. On the former trial it was not made clear what the circumstances were under which the purchase was made, nor the extent and character of Wich's actual interest, or his equitable title, nor was the matter settled by the verdict. In the present case it was in evidence that the negotiations for the purchase were made and completed by Wich under an agreement between him and the other three persons, substantially that he should make the purchase and that they should have an interest of a definite amount, provided within the next sixty days thereafter they paid their part of the purchase money. The agreement was not in writing and the proceeding was not aptly carried on for the perfect protection of Wich's interests. The nature of this contract was not deemed settled by the former judgment, because the question was not submitted with definite instructions respecting it. This has been entirely cured by the present trial, and the verdict absolutely determines the fact to be that Wich bought the property and had the sole interest in it, subject only to the agreement that the other three were to become coöwners on the performance of a condition precedent settled by the contract of purchase. By the agreement, the parties would become vested with an absolute title only on performance of the condition. These parties

did not pay the money, and subsequently transferred the legal title which they acquired by the conveyance from McCandless. Wich assumed the notes and was alone obligated to pay the balance of the consideration. The finding of the jury on this question relieves the case of a very great difficulty. Another equally troublesome question was also resolved against the Insurance Company. The jury not only rendered a general verdict, but were required by the company to answer a very large number of special questions, every one of which were answered adversely to the company's claim. But for the special findings, we might be still embarrassed by some matters presented in the record. According to them, Wich constituted The Arkansas Brewery Company at the date of the execution of the policy, the 4th of February, 1889, and was the sole party in interest when the fire occurred the 5th of September following. The value of the brewery building and contents was found to be a little upwards of $24,000, which is very close to the value stated by Wich when the policies were procured. The question of the circumstances under which the policies were delivered was also settled. At the time of the original negotiations for insurance, an application was prepared and signed by Wich, and thereafter all the policies, including the one sued on, were made out and delivered to Wich, who paid the premium. This application, however, does not figure in the suit. It was not produced, its terms were not relied on, and we are not advised as to what it was. Probably the present policy was not issued on the strength of it, but presumably with the expectation of subsequently getting an application to file in the office. At all events, there was a second application made out by the agents themselves and taken to Wich, who signed it, as he states, and as the jury concluded, without information as to its contents and on the request of the agent Carleton. All the statements which Wich made concerning the property and its value, its surroundings and circumstances, the jury found to be true. No other facts seem necessary to a requisite comprehension of the case, and if a

fuller understanding is desired, the antecedent opinions can be referred to.

We shall make no attempt to follow and dispose of the thirty-eight different propositions stated in the arguments of counsel.   The labor would subserve no useful purpose and we shall content ourselves simply with observing that we have carefully examined the record with reference to the law which is attempted to be applied, and have reached a general result which compels the affirmance of the judgment. We do not feel obligated to do more than dispose of the principal questions suggested.   The alleged discrepancy between the application, the statements in the policy, and the facts as developed by the evidence, will be entirely disregarded. The findings relieve us of the labor.   If the policy in suit had been issued on the original application and that put in evidence, we might then have been compelled to inquire whether its statements were borne out by the proof, whether they were warranties, and whether or not the company was released from any obligation because of an alleged breach. On the trial the present policy was assumed to have been issued on the second application.   Strenuous objection was interposed to the introduction of the policy, because it was unaccompanied by this application.   The objections were not well taken, because the application followed the issuance of the policy.   Evidence enough to convince the jury that the policy had been delivered on the faith and strength of an agreement to furnish an application or statement as a basis. for the insurance was not produced.   Under these circumstances, it is tolerably well settled the application is of little consequence, and is in reality no part of the proof which the plaintiff must make to sustain his case.   *Le Roy v. The Park Ins. Co.*, 39 N. Y. 56; *Rankin et al. v. Amazon Ins. Co.*, 89 Cal. 203.

The jury found the policy was not issued on a written application.   Perkins, Hart & Co. procured part of the insurance.from Packard & Piper, who were agents of other companies.   Wich did not apply to Packard & Piper for this

insurance, and in reality had nothing to do with the making out of an application for it. He was approached by Carleton, who had some connection with Perkins, Hart & Co. He had examined the property, solicited the insurance and practically ascertained the amount which the companies would probably be willing to carry. It is quite possible Carleton would, for some purposes, be treated simply as a solicitor, and with reference to the policies issued by Perkins, Hart & Co., he may have occupied this position. In reality, and in the procurement of the policy in suit, he appears to have been with that firm the practical representative of Packard & Piper, who were the conceded agents of the appellants. What he did with reference to the second application, what he said about it to Wich, and the circumstances of its procurement, in our judgment conspire to make him the representative of Packard & Piper and bind them as the agents of the company. Of course, there is a wide discrepancy in the testimony between Carleton, Shreve and Wich as to the circumstances attending the second application. Expressing no personal opinion respecting it, we accept the verdict, and conclude that Carleton filled out the application, took it to Wich to sign after the policies had been delivered, and without any understanding or agreement that the application was to be made out either before or after the delivery of the policy. Under these circumstances, it would be of no avail to the Insurance Company as a defense to the policy. We are not unmindful of a principle settled by some cases that where the assured agrees to make out a subsequent survey or application which is to be taken as the basis for the policy, the application or survey may be available to the company if the statements be untrue, though its execution may follow the delivery of the policy. In such a case the agreement is to be taken as a part and parcel of the policy and the application is to be regarded as attached to it as a condition. No such stipulation was made. The jury find the policy was not issued on the strength of a written application at all, and therefore the entire argument based

on its terms or conditions, or the circumstances attending its execution, are of no avail to defeat the appellant's liability. We shall dispose in the same general way with the errors which are laid on the refusal of the court to permit counsel to cross-examine the witnesses respecting the condition of the brewery and its occupation and sundry matters concerning the opinions they gave as to the value of the insured property. This disposes of some objections which otherwise might have force. Much of the attempted cross-examination was not pertinent to the examination in chief, and it was not error for the court to exclude it. If some of the questions should have been permitted, we are unable to discover that the error did the appellant any harm or that it affords a basis for the reversal of the judgment.

It is wholly unimportant to determine whether Carleton was so far the representative of Packard & Piper in the procurement of the further insurance as to bind them by the statements which he made to Wich concerning the situation and character of the property and the conditions under which the insurance would be issued. If Packard & Piper saw fit to deliver the policy without an application, trusting to Carleton to procure one subsequently, they would certainly be bound by whatever Carleton might do, and his statements would undoubtedly be admissible as against the company, whose agents Packard & Piper concededly were. With reference to this application, Carleton was not a soliciting agent, but was the actual representative of the agents of the company, by whose acts the company would certainly be bound. It was not error to admit his statements. If it were otherwise, the error was harmless, because the jury found the policy was issued without any application at all.

The proof and the verdict determine the equitable title to have been in Wich from the date of the purchase to the execution of the deed by the other three parties. The verdict was rendered under instructions which accurately limited and must have controlled the judgment of the jury. There was no room for prejudice or mistake. The opinions in the

other cases amply demonstrate the insurability of an equit-
able title, and the simple circumstance of the existence of a
legal title in Hess, Ell and Voght does not deprive Wich of
his insurable interest.  Their title was a naked one, unac-
companied with an interest, except upon the performance of
a condition which was never complied with.  Subsequently,
in accordance with the arrangement, the naked legal title
was transferred to Wich, whereby he became vested with
both the legal and equitable title prior to the time of the
occurrence of the fire.  As was before demonstrated, the
transfer of title was not such as to be a breach of the condi-
tion named in the policy concerning conveyances.  As to
the present policy, Packard & Piper, through their agent
Carleton, were presumably completely informed of the situa-
tion and circumstances of the title when the policy was
issued.  Assuming Carleton to be the representative of Pack-
ard & Piper, the information which he procured about it was
sufficient to advise the company respecting its status, and
the policy having been issued without warranty would be a
binding and enforcible contract against the company.  The
limitations on the authority of an agent are not always avail-
able.  The extent to which the assured is charged with
notice of the limits of the agent's authority has been the sub-
ject of much consideration, but the better authorities seem
to require either actual knowledge of the limitation or else
something in the circumstances which would bring the mat-
ter to the attention and knowledge of the policy holder.
*State Ins. Co. v. Taylor*, 14 Colo. 500 ; *Insurance Co. v. Wilk-
inson*, 13 Wall. 222.

The case does not present this question in such form as to
require a very exhaustive discussion or analysis.  While
Carleton may possibly have been simply a solicitor in his
relations to Perkins, Hart & Co., he occupied no such posi-
tion with reference to this particular policy which was issued
by Packard & Piper.  The insurance had been applied for
and the first named firm was engaged in placing it when they
applied to the representatives of the plaintiff company to pro-

cure the additional policies.   They were not, in the sense of
the term, solicitors, for the application had already been
made to Perkins, Hart & Co.   Packard & Piper had the
right to insist on an application in full form and protect the
companies by insisting on statements and warranties concern-
ing value, title and status, according to the usual custom.
Doubtless they might issue the policy and authorize Carle-
ton to deliver it, relying on his obtaining a subsequent appli-
cation, which would subserve their purpose.   In that event
they were the agents of their own concerns, by whose pro-
ceeding the company would be bound, when once the policy
was issued and the contract completed.   In the transaction
of the business between Wich and Packard & Piper, Carleton
was an agent, having apparent general authority, and there
is nothing in the record to show any actual limitation of it.
We think, under these circumstances, the information Carle-
ton acquired about the title, the statements Wich made to
him about it, and his declarations concerning the require-
ments of the companies, were matters competent to be sub-
mitted to the jury.   The knowledge which Carleton thus
obtained and the statements which he then made would on
sufficient proof charge the company with the same informa-
tion.   The statements were therefore admissible, though we
regard them in any event as of being of very slight conse-
quence in the settlement of the issue.   The whole equitable
title was in Wich, and had never been divested by the per-
formance of the condition precedent.   The legal title sub-
sequently became vested in him by a transfer which violates
no law or condition of insurance, because it was between *quasi*
partners.

We do not regard the affidavits which were rejected as
before us.   They were not examined because they are not in
the abstract.   Parties who desire to urge error on the refusal
to admit documents must put them in the abstract for the
convenience of the court, or it will be assumed the errors are
not well laid, and that there is not sufficient basis to urge
them in this court.   References to the transcript of record

are not in compliance with the rules, and we decline to assume the labor requisite to the examination of documents which can only be found there. So far as we can judge by the arguments of counsel and from what is in the abstract, the case is brought very clearly within the rule laid down by the supreme court of the United States which holds evidence of this 'sort inadmissible for the purposes of impeachment without a foundation laid by an examination of the witnesses upon the subject. A witness is assumed to have the right to explain the statement which is to be used to contradict him. His attention must be specifically directed to it and the opportunity thus afforded him, otherwise the contradiction will not be taken as effectual for the purposes of impeachment. *The Charles Morgan*, 115 U. S. 69.

The significance and importance of this adjudication is quite apparent from the circumstances under which the affidavits were obtained from Runkle, Wich and the other witnesses. The parties were not dealing at arms' length. The agent was seeking to procure testimony to defeat the contract into which his company had entered. From the constant litigation into which their companies are engaged to defeat their contracts, these astute dealers in fire insurance policies are very well advised of what is essential for the purposes of defense and their sole efforts are directed, not to the ascertainment of the exact facts surrounding the transaction, but to the procurement of incriminating admissions and statements of facts which can be ultimately used to the prejudice of the policy holder. For the purpose of establishing what the truth may be, such affidavits are of little value, and the witnesses should be accorded the largest and fullest privilege to state the circumstances under which they were procured and to explain any statements which are contained in them. We are unable to discover any error in refusing the cross-examination asked, and in permitting the explanations to be made, and in ultimately refusing permission to introduce them.

During the progress of the examination of the witness

Runkle, the court permitted him to refresh his recollection by reference to a memorandum made directly after the fire, and, after this examination, to testify generally concerning the facts about which he had made the record. In this ruling we discover no error which would be sufficiently prejudicial to the appellant to affect the ultimate judgment, nor can we find that the court disregarded the general rule which prevails in such cases. The memoranda were made at a time so nearly concurrent with the happening of the events of which they were the record as to be substantially contemporaneous accounts of the events which had transpired, and so long as the witness was able to speak from memory after he had thus refreshed his recollection, the use of the record was quite in accordance with the recognized rule. Matters of this sort are largely in the discretion of the trial court, and so long as the discretion is not abused and there is nothing which directly infracts the rights of the complaining party, the action of the court is not a legitimate subject-matter of complaint. *Lawson v. Glass*, 6 Colo. 134.

We are unable to appreciate the force of the contention that the special findings of the jury respected matters not properly involved in the issue and unsupported by the evidence. Just how the appellant can rightfully assert this position and complain of the results is not apparent. The questions were propounded by the Insurance Company. At the appellant's request, they were asked to determine these specific matters of fact. Under these circumstances it does not lie with the appellant to say they were harmed by the procedure and that the verdict should be set aside because the jury evidently determined facts unwarranted by the evidence. If the matter was not involved, the question should not have been propounded. Being propounded at the appellant's request, the company cannot be heard to say the case did not justify this consideration by the jury, and, in so far as the conclusions, if taken as true, are hurtful to the appellant, the result was achieved through their own procedure. It is entirely analogous to a request for instructions, which

is always · taken as conclusive on the person who requests them, and the requesting party can never be heard to challenge the correctness of instructions given on his own application.   *Ill. Central R. R. Co. v. Latimer*, 128 Ill. 163; *Lahr v. The Metropolitan Elevated Ry. Co.*, 104 N. Y. 268; *New York Elevated R. R. Co. v. Fifth Nat. Bank*, 135 U. S. 432.

We have thus disposed of all the matters which seem to require specific attention, and, the main propositions being determined against the appellant, there is nothing urged as error which would justify a reversal of the judgment.   The case was fairly tried, the jury were very carefully and accurately instructed regarding the law, their findings as well as their general verdict were against the appellant, and, being accepted as conclusive on all questions of fact, the ultimate judgment was correctly rendered thereon.

We shall therefore affirm the judgment.

*Affirmed.*