Jody JAMES and Barbara James,
Plaintiffs-Appellants,

v.

FORD MOTOR CREDIT COMPANY and
Del Norte Motor Company,
Defendants-Appellees.

No. 78–1806.

United States Court of Appeals,
Tenth Circuit.

Argued May 6, 1980.

Decided June 24, 1980.

Rehearing Denied July 21, 1980.

Richard J. Rubin, Santa Fe, N. M. (with him on the briefs were Paul L. Biderman, Santa Fe, N. M., and Timothy Meehan, Albuquerque, N. M., attorneys for Northern New Mexico Legal Services, Inc. and Le Roy Cordova), for plaintiffs-appellants.

Lawrence W. Treece, Denver, Colo. (with him on the briefs were Holme, Roberts & Owen, Richard L. Schrepferman and Jeffrey A. Chase, Denver, Colo.), for defendants-appellees.

Before SETH, Chief Judge, and BREITENSTEIN and DOYLE, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This action, which arose in Colorado, seeks recovery of a statutory civil liability for failure to disclose in an automobile installment purchase contract the right of the seller to a returned and unearned insurance premium on a policy covering physical damage insurance. The claim is made under the Truth in Lending Act, TILA, 15 U.S.C. § 1601 et seq. as implemented by Federal Reserve Board Regulation Z, 12 C.F.R. § 226. The district court granted a motion to dismiss and the plaintiffs-buyers appeal. We affirm.

The plaintiffs-appellants, Jody and Barbara James, purchased a pick-up truck from defendant-appellee Del Norte Motor Company and executed an installment purchase contract which was assigned to Ford Motor Credit Corporation. The contract shows a cash price of $5395.00, down payments of cash and trade-in totalling $900.50, and a balance due of $4,494.50. To this are added other charges consisting of $359.84 for insurance and $5.50 registration fee. Also added is a finance charge of $1,238.92, at an annual interest rate of 15.40%. The balance due is payable in monthly installments of $169.41.

Paragraph 13 of the signed face page of the contract reads:

"Security Interest: Seller shall have a security interest under the Uniform Commercial Code in the Property (described above) and to the proceeds thereof to secure the payment in cash of the Total of Payments and all other amounts due or to become due thereunder."

Paragraph 15 on the face page provides that the terms and conditions on the reverse side are incorporated by reference. Paragraph 18 on the reverse side relates to insurance and among other things provides:

"Buyer hereby assigns to Seller any monies payable under such insurance, by whomever obtained, including returned or unearned premiums, and Seller hereby is authorized on behalf of both Buyer and Seller to receive or collect same, * *. The proceeds from such insurance, by whomever obtained, shall be applied toward replacement of the Property or payment of the indebtedness hereunder in the sole discretion of the Seller."

TILA requires, 15 U.S.C. § 1631(a), that a creditor "clearly and conspicuously, in accordance with the regulations of the Board" disclose the information mandated by the Act. Reg. Z, 12 C.F.R. § 226.8(a) provides that all the disclosures be made on either:

"(1) The note or other instrument evidencing the obligation on the same side of the page and above the place for the customer's signature; or

(2) One side of a separate statement which identifies the transaction."

Failure to disclose properly the required information subjects the offender to a civil liability of not more than $1,000.00 plus reasonable attorneys' fees. 15 U.S.C. § 1640(a). The purchasers sue for the statutory liability and attorneys' fees. The trial court held that the assignment of the returned and unearned portion of the insurance premium was not a security interest under the Colorado version of the Uniform Commercial Code. See Colo.Rev.Stat. (1973) § 4-9-102.

TILA requires, 15 U.S.C. § 1638(a)(10), the disclosure of "[a] description of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates." The act does not define "security" or "security interest." Reg. Z provides, 12 C.F.R. § 226.2(gg):

" 'Security interest' and 'security' means any interest in property which secures payment or performance of an obligation. The terms include, but are not limited to, security interests under the Uniform Commercial Code, real property

mortgages, deeds of trust and [various liens and a lease interest securing performance of an obligation]."

The reference to the Uniform Commercial Code specifically declares that it is not a limitation. Although the interplay of federal and state law presents problems, the right to the TILA civil liability for nondisclosure rests on federal law. TILA is remedial legislation, designed to prevent predatory creditor practices, and must be liberally construed to effectuate the intent of Congress. See *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 365, 93 S.Ct. 1652, 1658, 36 L.Ed.2d 318 and *Littlefield v. Walt Flanagan and Company*, 10 Cir., 498 F.2d 1133, 1136.

Three circuits have held that nondisclosure of the seller's right to unearned and returned premiums violates TILA and subjects the seller to the statutory liability. See *Gennuso v. Commercial Bank & Trust Company*, 3 Cir., 566 F.2d 437; *Edmondson v. Allen-Russell Ford, Inc.*, 5 Cir., 577 F.2d 291, cert. denied 441 U.S. 951, 99 S.Ct. 2180, 60 L.Ed.2d 1057; and *Valencia v. Anderson Brothers Ford*, 7 Cir., 617 F.2d 1278. The last of these, *Valencia*, was decided on March 20, 1980.

On March 31, 1980, the President approved the "Truth in Lending Simplification and Reform Act" as Title VI of the "Monetary Control Act of 1980." P.L. 96–221, 94 Stat. 132. Section 614(a) amends 15 U.S.C. § 1638(a), the disclosure section of TILA. Subsection (a)(9) reads, U.S.Code Cong. & Admin.News, No. 3, May 1980, 94 Stat. 179:

> "Where the credit is secured, [the creditor shall disclose to the extent applicable] a statement that a security interest has been taken in (A) the property which is purchased as part of the credit transaction, or (B) property not purchased as part of the credit transaction identified by item or type."

S.R. 96–368, U.S.Code Cong. & Admin. News, supra, p. 850, states the purpose of the 1980 amendments thus:

> "Despite the act's clear successes, however, there is a growing belief among consumers and creditors alike that the act could be substantially improved. There is considerable evidence, for example, that disclosure forms given consumers are too lengthy and difficult to understand. Creditors, on the other hand, have encountered increasing difficulty in keeping current with a steady stream of administrative interpretations and amendments, as well as highly technical judicial decisions. There is also evidence that many creditors have sincerely tried to comply with the act but, due to its increasing complexity and frequent changes, have nonetheless found themselves in violation and subject to litigation. In addition, this committee and other congressional and government sources have found the level of administrative enforcement by the Federal bank agencies seriously inadequate. In short, the committee believes that the interests of both consumers and creditors would be furthered by simplification and reform of the act."

With particular reference to the amendment of the disclosure requirements of § 1638(a), the Senate Report says, U.S. Code Cong. & Admin.News 1980, p. 864:

> "The security interest disclosure is also simplified to eliminate the technical disclosure of the type of security interest taken. When a security interest is being taken in property purchased as part of the credit transaction, this section requires a statement that a security interest has been or will be taken in the property purchased. When a security interest is being taken in property not purchased as part of the credit transaction, *the Committee intends this provision to require a listing by item or type of the property securing the transaction, but not a listing of related or incidental interests in the property.* For example, a loan secured by an automobile (not being purchased with the proceeds of the loan) would require a statement indicating that the loan is secured by an automobile but would not require a listing of incidental or related rights which the creditor may have such as insurance proceeds or un-

earned insurance premiums, rights arising under, or waived in accord with state law, accessions, accessories or proceeds." (Emphasis supplied)

S.Rep.No. 96–73 says, U.S.Code Cong. & Admin.News 1980, at 879–880:

"The subcommittee learned that judging from consumer tests in other areas, the typical disclosure statement utilized today by creditors is not an effective communication device. Most disclosure statements are lengthy, written in legalistic fine print, and have essential truth in lending disclosures scattered among various contactual [sic] terms.

The result is a piece of paper which appears to be 'just another legal document' instead of the simple, concise disclosure form Congress intended."

*Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980), was concerned with the imposition of the statutory liability under TILA for a claimed nondisclosure of an acceleration clause. The Court concluded, at 561, 100 S.Ct. at 794, that the issue of acceleration disclosure "is not governed by clear expression in the statute or regulation, and *** it is appropriate to defer to the Federal Reserve grard and staff in determining what resolution of that issue is implied by the truth in lending enactments." The Court examined the Federal Reserve Board staff treatment of acceleration disclosure and denied imposition of the statutory liability.

We are aware of no administrative interpretations pertinent to the particular issue before us. Public Position Letter No. 377, quoted in *Edmondson,* 577 F.2d 295, n. 8, relates to life insurance, not physical damage insurance. Staff Letter 1263, Consumer Credit Guide (CCH) ¶ 31,736 (November 23, 1977), an unofficial interpretation, leaves to state law the question of whether a security interest has been acquired by the creditor and, if so, whether that interest has been adequately identified.

In *Milhollin,* supra, at 568, 100 S.Ct. at 798, the Court said:

"The concept of 'meaningful disclosure' that animates TILA (citation omitted), cannot be applied in the abstract. *Meaningful* disclosure does not mean *more* disclosure. Rather, it describes a balance between 'competing considerations of complete disclosure . . . and the need to avoid . . . "informational overload" ' (citations omitted) and striking the appropriate balance is an empirical process that entails investigation into consumer psychology and that presupposes broad experience with credit practices." (Emphasis in original).

The *Milhollin* approach parallels the intent of Congress in enacting the 1980 amendments and the legislative history of those amendments. The effort is to strengthen the impact of TILA by simple, concise disclosures which can be understood by consumers and creditors. The installment contract in issue identifies the security interest taken in the property purchased, the pick-up truck. The insurance charge is specifically noted on the face of the contract and is included in the total amount which must be repaid in monthly installments. The insurance on damage to the vehicle was part of the credit transaction. The right of the seller to the returned premium would seem to be part of the "proceeds" of that transaction. If not such a part, the returned premium is property not purchased. The Senate Report, U.S.Code Cong. & Admin.News 1980, supra p. 864, says with reference to property not purchased, that the disclosure need not include "a listing of incidental or related rights which the creditor may have such as insurance proceeds or unearned insurance premiums." We are convinced that the Act does not require, and Congress did not intend it to require, an exemplification of that interest on the face of the installment contract. Because of this conclusion, we need not delve into the legal complexities of the Third Circuit decision in *Gennuso,* 566 F.2d 437; the Fifth Circuit decision in *Edmondson,* 577 F.2d 291; and the Seventh Circuit decision in *Valencia,* 617 F.2d 1278.

The application of *Milhollin* and the 1980 actions of Congress present no retroactivity problem. We are concerned only with civil

liability for nondisclosure. The buyers have shown no damage. Our decision establishes no new principle of law. Rather, it recognizes the congressional intent. Application to this case furthers the operation of TILA and produces an equitable result. See *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–107, 92 S.Ct. 349, 355, 30 L.Ed.2d 296.

Affirmed.

WILLIAM E. DOYLE, Circuit Judge, dissenting.

Because of my belief that the seller's right to unearned and returned premiums is a security interest, and thus the installment purchase contract here violates the Truth in Lending Act, I respectfully dissent.

The question is whether the provision in the contract which provides that the buyer assigns to the seller any monies payable under the insurance (on the car), including returned or unearned premiums, and which authorizes the seller on behalf of both parties to receive or collect same constitutes a violation of the Truth in Lending Act.

Regulation Z, 12 C.F.R. Section 226.2(gg), defines security interest as meaning "any interest in property which secures payment or performance of an obligation. The terms include, but are not limited to, security interests under the Uniform Commercial Code . . . ."

This problem is not a new one. Three circuits have considered this issue and have held that the nondisclosure of the seller's right to unearned and returned premiums violates the Truth in Lending Act and subjects the seller to the remedy which is being pursued here. The cases are *Gennuso v. Commercial Bank & Trust Company*, 566 F.2d 437 (3rd Cir. 1977); *Edmondson v. Allen-Russell Ford, Inc.*, 577 F.2d 291 (5th Cir. 1978), *cert. denied* 441 U.S. 951, 99 S.Ct. 2180, 60 L.Ed.2d 1057; and *Valencia v. Anderson Brothers Ford*, 617 F.2d 1278 (7th Cir. 1980).

The earliest of these decisions is *Gennuso v. Commercial Bank & Trust Co.*, *supra*. Here the plaintiff charged that the Commercial Bank and Trust Company failed to properly identify in the Disclosure Statement and in the Note and Security Agreement a security interest in the proceeds and the unearned premiums in a property insurance policy covering the automobile that he had purchased. It was alleged that such failure violated the Truth in Lending Act and Regulation Z. No mention of the security interest in the insurance policy was made at the top of the note where the collateral was described. There had been some slight mention of the interest in question in the note and security agreement. It was held that the use of general language in this document was sufficient. It was said that the mention of the security interest in after-acquired property satisfied the requirements of the Act. The court held that the conduct of the bank constituted a violation of the Truth in Lending Act and Regulation Z as well.

To the same effect is *Edmondson v. Allen-Russell Ford, Inc.*, *supra*. Here again the court held that the assignment of a returned or unearned premium of an insurance policy was a security interest for purposes of Regulation Z, in accordance with the Truth in Lending Act, and had to be disclosed. The court, through Goldberg, J., had no difficulty concluding that the unearned portion of the premium was a security interest which had to be disclosed. The court relied on *Gennuso v. Commercial Bank & Trust Co.*, *supra*. Here again the court ruled that it was inadequate to construe the general provision that the " 'Seller shall have a security interest under the Uniform Commercial Code in the Property (described above) and in the proceeds thereof . . . .' " 577 F.2d at 295. The court said that the "lender must disclose the type of security interest held, retained, or acquired and the property of the borrower which serves or will serve as the collateral." 577 F.2d at 295. A sufficient description was determined to be essential.

The third of the recent circuit cases is *Valencia v. Anderson Brothers Ford*, *supra*, from the Seventh Circuit. The court said:

We therefore affirm the district court's ruling that an assignment of unearned or

returned insurance premiums in a consumer credit installment contract is a security interest for purposes of disclosure under the TILA. This result is consistent with the liberal interpretation to be given the Act, the majority of federal court decisions addressing the issue, and a Federal Reserve Board staff interpretation of a closely analogous issue. In view of the interest in uniformity in TILA disclosures and in the absence of any persuasive argument to the contrary, we decline to break with the Third and Fifth Circuits on this issue.

At p. 1286.

The majority was influenced by the fact that on March 31, 1980, the President approved the "Truth in Lending Simplification and Reform Act," which amended 15 U.S.C. Section 1638(a), the disclosure section of the Truth in Lending Act. As amended, it was pointed out by the majority that this section permits disclosure of the principal property which provides the security for the loan. It does not require, so the Report says, a listing of related or incidental interests in the property, and it gives as an example a loan secured by an automobile which is not being purchased with the proceeds of the loan, but which would require a statement indicating that the loan is secured by an automobile. It would not require a listing of incidental or related rights which the creditor may have such as insurance proceeds or unearned insurance premiums.

The majority also calls attention to the recent opinion of the Supreme Court in *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980), which adopted the approach that security documents have, in the past, carried too much excess luggage and that they should disclose with simplicity and should limit themselves to the disclosure of the matters having to do with the security itself. This may well be the present tendency, but at the time of the occurrence in question the approach which is shown by the Third, Fifth and Seventh Circuits obtained.

In summary, the automobile insurance policy and, of course, the premium which is paid to obtain the coverage, are part and parcel of the entire automobile financing business. It makes the loan more secure.[1] Thus the unearned premium which would ordinarily go to the insured and which is being held back by the lender is information of genuine interest to the purchaser-insured, and it is not possible to cause it to be unimportant.

The new approach might render the procedure less complicated. Nevertheless, I submit that we are not justified in adopting this concept so as to apply it to the present set of facts and to do so only on the basis of legislative history which attended the enactment of the amendments. Even if the legislative history would call for a different result, it should not be applied here in a retroactive way.

For the reasons stated, I disagree with the majority opinion.

ON PETITION FOR REHEARING

The petition for rehearing is denied. The petitioners-appellants object to the consideration which the court gave to the March 31, 1980, "Truth in Lending Simplification Act" and its legislative history. The Supreme Court has said that when two acts are in *pari materia,* the later act can be "regarded as a legislative interpretation of the earlier." *United States v. Stewart,* 311 U.S. 60, 64, 61 S.Ct. 102, 105, 85 L.Ed. 475. In *Regents of the University of California v. Bakke,* 438 U.S. 265, 349, 98 S.Ct. 2733, 2779, 57 L.Ed.2d 750, the separate opinion of four Justices says: "We have repeatedly recognized that subsequent legislation reflecting an interpretation of an earlier Act is entitled to great weight in determining the meaning of the earlier statute."

The 1968 and 1980 acts related to the same subject matter, "Truth in Lending." We are convinced that the 1980 Act reflects an interpretation by Congress of the earlier

---

1. If, for example, the automobile were to be stolen or totaled out in an accident, there would be no security in the absence of insurance.

act and is entitled to great weight. The effect is that Congress in passing the 1968 act did not intend to impose a civil penalty for the type of nondisclosure claimed by the appellants.

Judge Doyle would grant the petition for rehearing.

The petition for rehearing having been denied by the panel to whom the case was argued and submitted and no member of the panel nor judge in regular active service on the court having requested that the court be polled on rehearing en banc, Rule 35, Federal Rules of Appellate Procedure, the suggestion for rehearing en banc is denied.