673 F.2d 256
 John BONCYK, Plaintiff-Appellee,
v.
CAVANAUGH MOTORS, a partnership, and Bank of America, a
corporation, Defendants,
Cavanaugh Motors, Defendant-Appellant.
Sherry HUGHES, Plaintiff-Appellee,
v.
WALT MARTIN MOTORS, INC., and Bank of America, a
corporation, Defendants,
Walt Martin Motors, Inc., Defendant-Appellant.
John BONCYK, Plaintiff-Appellee,
v.
CAVANAUGH MOTORS, a partnership, and Bank of America, a
corporation, Defendants,
Bank of America, a corporation, Defendant-Appellant.
Sherry HUGHES, Plaintiff-Appellee,
v.
WALT MARTIN MOTORS, INC., and Bank of America, a
corporation, Defendants,
Bank of America, a corporation, Defendant-Appellant.
John BONCYK, Plaintiff-Appellant,
v.
CAVANAUGH MOTORS, a partnership, and Bank of America, a
corporation, Defendants-Appellees.
Sherry HUGHES, Plaintiff-Appellant,
v.
WALT MARTIN MOTORS, INC., and Bank of America, a
corporation, Defendants-Appellees.
 Nos. 77-2965, 77-2866 and 77-3075.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 10, 1980.
Decided Sept. 28, 1981.
Rehearing and Rehearing En Banc Denied March 22, 1982.
 
 Robert A. Goldstein, Oakland, Cal., for Boncyk.
 Ernest S. Pierucci, San Mateo, Cal., argued, for Cavanaugh Motors; Harold C. Wright, San Mateo, Cal., on brief.
 Joseph S. King, San Francisco, Cal., argued, for Bank of America; Joseph Thornhill, San Francisco, Cal., on brief.
 Appeal from the United States District Court for the Northern District of California.
 Before HUG and TANG, Circuit Judges, and MURRAY*, Senior District judge.
 HUG, Circuit Judge:
 
 
 1
 This appeal involves two consolidated cases in which purchasers of used cars brought actions against the car dealers and the financing bank as creditors for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601-1693. Plaintiff Sherry Hughes agreed on June 19, 1974, to purchase a used car from defendant Walt Martin Motors ("Martin"). Plaintiff John Boncyk agreed on July 26, 1974 to purchase a used car from defendant Cavanaugh Motors ("Cavanaugh"). Hughes and Boncyk each received and signed identical contracts entitled: "Security Agreement (Purchase Money): Motor Vehicle (Incorporating Federal Truth in Lending Disclosures)." This agreement and disclosure statement was prepared by and furnished to Martin and Cavanaugh by defendant Bank of America (the "Bank").
 
 
 2
 The case presents the following issues: (1) Is the Bank a creditor for purposes of the TILA? (2) If so, was its status as creditor properly identified? (3) Did failure to disclose the dealer differential as an element of the finance charge violate the Act? (4) Did failure to disclose insurance charges as part of the credit agreement violate the Act? (5) Did failure to disclose the existence of an acceleration clause constitute a violation? (6) If any of these substantive violations occurred, what was each creditor's liability to make the disclosure? (7) Was the award of attorneys' fees to plaintiffs proper?
 
 
 3
 The district court found that Cavanaugh and Martin were credit arrangers as defined by 15 U.S.C. § 1602(f) and 12 C.F.R. § 226.2(h) and (s). It found that the Bank was a credit extender under 15 U.S.C. § 1602(f) and Regulation Z, 12 C.F.R. § 226.2(s). Whether creditor status was adequately identified, and whether such a failure creates liability under the TILA, were not considered. The court found no violation of the TILA with respect to disclosure of the elements of the finance charge and of insurance charges. It concluded that failure to disclose the acceleration clause did violate the TILA. The dealers and the Bank were held jointly and severally liable for that violation. The district court awarded damages of twice the finance charge, as well as costs and attorneys' fees, to the plaintiffs.
 
 
 4
 * The Bank contends it has no liability for claimed violations of the TILA because it is not a creditor.[1] Regulation Z defines a creditor as "a person who in the ordinary course of business regularly extends or arranges for the extension of consumer credit." 12 C.F.R. § 226.2(s). The Bank claims that it is not covered by this definition because it merely accepted the assignment of a completed credit agreement between the buyers and the dealers.[2]
 
 
 5
 The district court, in its detailed findings of fact, found that at the time of the transactions in question, there was in effect an Automobile Dealer Agreement between both dealers and the Bank. In this agreement, the Bank required each dealer to submit evidence of insurance coverage for the vehicle or of the buyer's agreement to furnish insurance. As a result of this clause, Cavanaugh and Martin required Boncyk and Hughes, respectively, to purchase insurance before driving their cars off the dealers' lots.
 
 
 6
 The district court also found that neither dealer, when making a credit sale of an automobile, ever intended to carry the paper itself. During 1974, both dealers assigned to financial institutions all their automobile credit sales contracts. The Bank was Martin's first choice for the assignment of contracts it believed the Bank would purchase. In 1974, 218 or 219 of the 403 contracts assigned by Martin were assigned to the Bank. Cavanaugh assigned to the Bank 73 of the 74 contracts for vehicles it sold on credit. The Bank accepted every contract offered it in 1974 by Martin and Cavanaugh. Even before it received any documents concerning the transaction, the Bank advised Martin that the Hughes contract met the Bank's standards for assignment. The Bank assumed that contracts written on the forms prepared and supplied by it would be assigned to it. Both contracts were assigned to the Bank on the same day the transactions took place: June 19, 1974 for the Hughes purchase, and July 26, 1974 for the Boncyk purchase.
 
 
 7
 Other circuits, when confronted with facts similar to these, have held that both the seller and the financial institution are creditors for purposes of the TILA. The rationale for finding creditor status has been expressed in two ways. First, as developed in Meyers v. Clearview Dodge Sales, Inc., 539 F.2d 511, 515 (5th Cir. 1976), cert. denied, 431 U.S. 929, 97 S.Ct. 2633, 53 L.Ed.2d 245 (1977), is the theory that there are multiple original creditors, a credit extender and a credit arranger. Second, as set forth in Joseph v. Norman's Health Club, Inc., 532 F.2d 86, 91-92 (8th Cir. 1976), is the theory that the seller acts as a "conduit" for the finance company. In reality, these two theories seem to be different ways of stating the same proposition-that in transactions such as the one in the present case, both the seller and the finance company are creditors for purposes of the TILA.
 
 
 8
 The Supreme Court recently addressed this issue in a case involving an automobile dealer and Ford Motor Credit Company, to whom sales contracts were assigned in circumstances virtually the same as in the instant case. The Court stated:
 
 
 9
 Regulation Z, promulgated pursuant to the Act, defines the term consistently with the above: " 'Creditor' means a person who in the ordinary course of business regularly extends or arranges for the extension of consumer credit ...." 12 CFR § 226.2(s). On the facts of this case, the above definition easily encompasses both the dealers and FMCC. Each dealer arranged for the extension of credit but FMCC actually extended the credit. (footnote omitted)
 
 
 10
 Ford Motor Credit Company v. Cenance, 452 U.S. 155, 101 S.Ct. 2239, 2241, 68 L.Ed.2d 744 (1981). See also Price v. Franklin Investment Co., Inc., 574 F.2d 594, 601 (D.C.Cir.1978); Hinkle v. Rock Springs National Bank, 538 F.2d 295, 297 (10th Cir. 1976); Mirabal v. General Motors Acceptance Corp., 537 F.2d 871, 874 n.1 (7th Cir. 1976).
 
 
 11
 The position of the Bank in this case is virtually identical to that of FMCC in the Cenance case. We therefore conclude that the Bank is a creditor.
 
 II
 
 12
 We next consider whether the TILA was violated by a failure to identify the Bank as a creditor. Regulation Z, 12 C.F.R. § 226.6(d) requires in part:
 
 
 13
 If there is more than one creditor or lessor in a transaction, each creditor or lessor shall be clearly identified ....
 
 
 14
 In Milhollin v. Ford Motor Credit Co., 9 Cir., 588 F.2d 753 at 757, we held that the following statement was sufficient to disclose Ford Motor Credit's exact role in the transaction:The foregoing contract hereby is accepted by the Seller and assigned to Ford Motor Credit Company in accordance with the terms of the assignment set forth on the reverse side hereof.
 
 Seller ___
 By ____________ Title ___
 
 15
 The use of the word "creditor" was held not to be required. Id.; accord, Sharp v. Ford Motor Credit Co., 615 F.2d 423, 426 (7th Cir. 1980); Augusta v. Marshall Motor Co., 614 F.2d 1085, 1086 (6th Cir. 1979). The Supreme Court in Ford Motor Credit Company v. Cenance, 101 S.Ct. at 2241-42, held that a statement notifying the buyer of an assignment to Ford Motor Credit Company was sufficient disclosure.
 
 
 16
 In the present case, however, the only identification of the Bank on the face of the contracts was the Bank's logo and name in the upper left corner and the provision under the "Terms of Agreement" that stated:
 
 
 17
 A. PAYMENT: Buyer promises to pay Seller at the ________ Branch of Bank of America National Trust and Savings at ________, California, the Total of Payments in the manner specified in Item 11.
 
 
 18
 This statement was not a sufficient revelation of the Bank's role in the transaction. There is no indication that the contract was to be assigned to the Bank, or of any participation by the Bank, other than as a place where the seller was to be paid. We conclude that the statement was insufficient to identify clearly the Bank as a creditor and therefore did not comply with 12 C.F.R. § 226.6(d). It is implicit in the opinion of the Court in Cenance that a failure to clearly identify each creditor is a failure to disclose which imposes liability under the TILA.
 
 III
 
 19
 Hughes and Boncyk contend that there was a failure to disclose under 12 C.F.R. 226.8(c)(8)(i), which requires that each element of the finance charge be disclosed. The contention is that the failure to disclose the amount of the dealer differential violated this provision. The dealer differential, as defined by the Automobile Dealer Agreement, is the difference between the total finance charge paid by the customer and the discounted charge received by the Bank. The dealer differential arises because the dealer assigns the contracts to the Bank at a discount and thus, in effect, the dealer receives a portion of the finance charge.[3]
 
 
 20
 The district court reasoned that the finance charge paid by the customer in Hughes's and Boncyk's contracts consisted of only one element-the time-price differential, a portion of which was received by the Bank and a portion by the dealer. It was concluded that the dealer differential did not constitute an additional charge, but instead was included in the time-price differential rate, which was disclosed to the customer. In reaching this conclusion, the district court relied on a proposed addition to Regulation Z, § 226.821. That provision, which has since been adopted, specifically exempts from the disclosure requirement "(a) portion of such single component of the finance charge which is distributed to a dealer." The reasoning of the district court is sound and we therefore affirm the district court's rejection of this claim.
 
 IV
 
 21
 The plaintiffs allege that information given them regarding the purchase of insurance violated the disclosure requirement. The district court found that although the purchase of collision insurance was a prerequisite to taking possession of the car in each case, the insurance purchase was a transaction distinct from the automobile purchase. This was based on the fact that insurance charges were neither part of the down payment made on the cars nor part of the cost of financing the cars. The insurance purchase was not financed through the credit contract. Therefore, the district court concluded that insurance charges were not a required disclosure in this instance.
 
 
 22
 This conclusion is consistent with the regulations governing the purchase of insurance. 12 C.F.R. § 226.4(a)(6) requires disclosure of charges for property insurance written "in connection with" the credit transaction. Section 226.405, in defining the necessary connection, exempts from the disclosure requirement charges for insurance not purchased from, or financed through, the creditor. Hughes and Boncyk were not required to purchase insurance from the dealers. Neither the dealers nor the Bank financed the insurance purchase. We therefore affirm the conclusion of the district court that neither defendant could be liable on this claim.
 
 V
 
 23
 The final disclosure requirement at issue here concerns the acceleration clause. The district court concluded that the failure to disclose on the front of the credit agreements the existence of this clause constituted a violation of the TILA. This was the precise issue later considered by the Supreme Court in Ford Motor Credit Company v. Milhollin, 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980). In that case the Court held that because acceleration does not constitute a "default, delinquency or similar charge", its disclosure is not specifically required by the TILA. Instead, deference must be granted to the view of the Federal Reserve Board that specific disclosure of an acceleration provision is required only if the creditor's policy for refunding unearned finance charges in the case of acceleration differs from the stated refund policy with respect to voluntary prepayment.
 
 
 24
 The district court made no findings regarding the rebate provision for voluntary prepayment in these agreements. However, because we affirm on other grounds, as hereinafter discussed, we need not remand for a determination of whether, under Milhollin, a basis exists to impose liability.
 
 VI
 
 25
 We turn now to the issue of allocation of responsibility for disclosures. The creditor's responsibility for making required disclosures is broadly stated in 15 U.S.C. § 1631(a):
 
 
 26
 Each creditor shall disclose clearly and conspicuously, in accordance with the regulations of the Board, to each person to whom consumer credit is extended, the information required under this part or part D of this subchapter.
 
 
 27
 12 C.F.R. § 226.6(d) explains the application of this statutory responsibility to multiple creditors.[4]
 
 
 28
 We adopt the conclusion of several other circuits that a qualified responsibility for inadequate disclosure is placed on each creditor by the provision that "each creditor or lessor shall be clearly identified and shall be responsible for making only those disclosures ... which are within his knowledge and the purview of his relationship with the customer or lessee." 12 C.F.R. § 226.6(d). See Jennings v. Edwards, 454 F.Supp. 770, 775 (M.D.N.C.1978), sum. aff'd., 598 F.2d 614 (4th Cir. 1979); Price v. Franklin Investment Co., Inc., 574 F.2d 594, 601-02 (D.C.Cir.1978); Hinkle v. Rock Springs National Bank, 538 F.2d 295, 296-97 (10th Cir. 1976); Smith v. Lewis Ford, Inc., 456 F.Supp. 1138, 1140-41 (W.D.Tenn.1978).
 
 
 29
 Under this regulation, each defendant is liable for failing to disclose any information which constitutes a required disclosure and which is within the "knowledge and purview of the creditor." The fact that the Bank is the extender of the credit in both cases is clearly within the knowledge and purview of both the Bank and the automobile dealers. The liability then falls upon each as a creditor.
 
 
 30
 We find no merit in the Bank's contention that a finding of liability threatens its due process rights because of vagueness or lack of specificity in the statute and regulations. Our interpretation of the statute and the applicable regulations is consistent with their plain language. The definition of a creditor and the provisions of allocation of responsibility are not so vague that to find a TILA violation would infringe upon the defendants' due process rights. Our decision was reasonably foreseeable in light of the language of the statute and regulations.
 
 
 31
 It is settled that in the appellate review of judicial proceedings "(i)f the decision below is correct it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason." Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937); Thomas P. Gonzales Corp. v. Consejo Nacional, etc., 614 F.2d 1247, 1256 (9th Cir. 1980). We find that the TILA was violated, and that liability in each case is appropriately imposed on the automobile dealer and the Bank. The damages awarded under 15 U.S.C. § 1640(a)(2)(A)(i) are appropriate and judgment of the district court is affirmed.
 
 VII
 
 32
 Plaintiffs who bring a successful action under the TILA are entitled to an award of reasonable attorneys' fees. 15 U.S.C. § 1640(a)(3). In the present case, the district court thoroughly examined the work of plaintiffs' counsel and awarded a total fee of $3,000. The plaintiffs contend that this award is unreasonably low.
 
 
 33
 In Kerr v. Screen Extras Guild, Inc., 526 F.2d 67 (9th Cir. 1975), cert. denied, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976), this court adopted the twelve factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) as the appropriate factors to be used in determining the amount of fees to be awarded. "The amount of attorney's fees to be awarded is, of course, within the discretion of the trial court and will not be disturbed absent an abuse of discretion." Kerr v. Screen Extras Guild, Inc., 526 F.2d at 69. The district court considered all of the twelve factors in determining the fee. We conclude that under the circumstances of this case the district court did not abuse its discretion in determining the amount of the attorneys' fees. Plaintiffs are entitled to reasonable attorneys' fees on this appeal, in an amount to be determined by the district court.
 
 
 34
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable William D. Murray, Senior United States District Judge for the District of Montana, sitting by designation
 
 
 [1]
 The dealers do not contend, nor could they under the facts of this case, that they are not creditors under the TILA
 
 
 [2]
 The TILA was amended in 1974 to allow actions to be maintained against subsequent assignees of the original creditor:
 Except as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter which may be brought against the original creditor in any credit transaction may be maintained against any subsequent assignee of the original creditor where the violation from which the alleged liability arose is apparent on the face of the instrument assigned unless the assignment is involuntary.
 15 U.S.C. § 1614. However, the effective date of this section was October 28, 1974, several months after the transactions in the present case occurred. Any liability of the Bank as an assignee under this section is uncertain. See Joseph v. Norman's Health Club, Inc., 532 F.2d 86, 91 n.7 (8th Cir. 1976). Our conclusion that the Bank is a creditor makes resolution of this issue unnecessary.
 
 
 [3]
 Under the Automobile Dealer Agreement, the amount of the discount to which the dealer is entitled is credited by the Bank to the dealer's reserve account. This account must be maintained with a balance equal to a specified percentage of the outstanding contracts assigned by that dealer to the Bank as security for obligations of the dealer to the Bank, including the dealer's obligation to repurchase the contracts of defaulting customers. The excess of the balance in the reserve account over the percentage required is paid to the dealer monthly. Thus, the dealer would ultimately receive the entire balance in the reserve account if there are no customer defaults requiring repurchase of contracts assigned, and if there are no other unmet contractual obligations of the dealer to the Bank
 
 
 [4]
 12 C.F.R. § 226.6(d) provides:
 Multiple creditors or lessors; joint disclosure. If there is more than one creditor or lessor in a transaction, each creditor or lessor shall be clearly identified and shall be responsible for making only those disclosures required by this Part which are within his knowledge and the purview of his relationship with the customer or lessee. If two or more creditors or lessors make a joint disclosure, each creditor or lessor shall be clearly identified. The disclosures required under paragraphs (b) and (c) of § 226.8 shall be made by the seller if he extends or arranges for the extension of credit. Otherwise disclosures shall be made as required under paragraphs (b) and (d) of § 226.8 or paragraph (b) of § 226.15.