Sadie EUSTACE, Plaintiff-Appellant,

v.

COOPER AGENCY, INC., and Bogue Brothers, Inc., d/b/a L & G Home Furnishings, Defendants-Appellees.

No. 82–1658.

United States Court of Appeals, Tenth Circuit.

Aug. 3, 1984.

Richard J. Rubin, and Paula Forney-Thompson, Santa Fe, N.M., for plaintiff-appellant.

Bradford C. Berge of Campbell, Byrd & Black, Santa Fe, N.M., for defendants-appellees.

Before HOLLOWAY, BARRETT and SEYMOUR, Circuit Judges.

HOLLOWAY, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Circuit R. 10(e). The cause is therefore ordered submitted without oral argument.

Sadie Eustace brought this action under the Truth-in-Lending Act, 15 U.S.C. § 1601 *et seq.*, (TILA) and Federal Reserve Board Regulation Z, 12 C.F.R. § 226. Her complaint alleged, *inter alia*, that defendant Cooper Agency, Inc. (Cooper Agency) and Bogue Brothers, Inc., (Bogue Brothers)

failed to comply with requirements of the statute and the regulation by not disclosing the creditor status of Cooper Agency in the transaction.[1] Defendants Cooper Agency and Bogue Brothers denied any violation of the Act and Regulation.

After a non-jury trial the district court entered judgment against plaintiff Eustace and she appeals. She argues that the district court erred in holding that defendant Cooper Agency was not a creditor in the transaction at issue for the purposes of the Act and the Regulation, and in refusing to rule on Eustace's motion for summary judgment.

## I

■ On August 28, 1980, Eustace and defendant Bogue Brothers entered into an installment credit contract for the purchase of a washer and dryer; Eustace also refinanced the balance which she owed to Bogue Brothers from a previous retail installment contract. I R. 2, 5–6. This contract was assigned to defendant Cooper Agency which had also been assigned the previous retail installment contract. I R. 19.

The complaint in this action alleged that defendants failed to identify both creditors in the transaction, in violation of §§ 226.-8(a) and 226.6(d) of Regulation Z; failed to make the disclosures using the prescribed terminology, in violation of §§ 226.6(a) and 226.8(c)(1) of Regulation Z; failed to make all required disclosures clearly, conspicuously, and in meaningful sequence, and in accordance with the further requirements of the Act and the Regulation; disclosed

improper additional information, in violation of § 226.6(c) of the Regulation; and alternatively, failed to make all required disclosures on one side of one page, in violation of § 226.8(a) of the Regulation. I R. 3. In its Memorandum Opinion and Order the district court concluded:

> The plaintiff has failed to establish that Cooper Agency was a "creditor" as that term is defined by the Truth in Lending Act in this consumer credit transaction. Therefore, the fact that the plaintiff's Retail Installment Contract did not identify Cooper Agency as a "creditor" on its face is immaterial and does not constitute a violation of the Truth in Lending Act.

I R. 40. Judgment was entered against plaintiff. I R. 42.

## II

The dispositive questions before us are (1) Was the Cooper Agency a creditor under TILA and Regulation Z? and (2) If the Cooper Agency was a creditor, was it identified as a creditor as required by TILA and Regulation Z? [2]

Eustace first argues that the district court erred in holding that Cooper Agency is not a creditor for purposes of the Act and Regulation Z because the "creditor" status of Cooper Agency was never controverted, because the admission that Cooper Agency is a "creditor" is binding and conclusive, and because failure to abide by the admission denies Eustace due process of law. Eustace quotes paragraph 5 of her complaint which alleges:

1. The statute provides in part as follows:

    (f) The term "creditor" refers only to creditors who regularly extend, or arrange for the extension of, credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, whether in connection with loans, sales of property or services, or otherwise.

    15 U.S.C. § 1602 (1976).

    The regulation provides in part as follows:

    (s) "Creditor" means a person who in the ordinary course of business regularly extends or arranges for the extension of consumer credit or offers to extend or arrange for the extension of such credit, which is payable by

    agreement in more than four installments, or for which the payment of a finance charge is or may be required, whether in connection with loans, sales of property or services, or otherwise.

    12 C.F.R. § 226.2 (1980).

2. Eustace argues that the district court erred in refusing to grant her motion for summary judgment. No ruling on the motion for summary judgment was entered on the docket sheet. I R. 44–47. Because a non-jury trial was held to resolve these issues, we assume that the district court determined that it should not grant Eustace's motion for summary judgment.

5. At all times relevant hereto, Defendants, in the ordinary courses of their businesses, regularly extended, offered to extend, arranged or offered to arrange the extension of credit to their customers for which a finance charge is or may be imposed or which is payable in more than four installments.

I R. 2. Defendants admitted the allegations of paragraph 5 and some other averments.

Defendants state that "the admitted fact that Cooper was, in a general sense, a creditor as defined by law, does not establish that Cooper was a creditor in the disputed transaction. Cooper's role in the transaction was disputed throughout the proceedings." Brief of Appellees at 4–5. Defendants also say that "the fact that Cooper was generally in the business of being a creditor is perhaps probative of its role in the transaction; however, it is not dispositive." *Id.* at 7. We feel it is not clear that defendants admitted that Cooper Agency was a creditor within the meaning of TILA in this transaction. However, in any event the district judge evidently thought this matter to be an issue at trial because he considered the evidence and found that Cooper Agency was not a creditor. Thus the question before us is whether that finding was correct.

### III

Eustace argues that there was no basis on which to find that Cooper Agency was not a "creditor." She says that "the fact that Lender had not 'approved the credit application before the seller of the consumer goods consummated its sale' " is not the *sine qua non* of creditor status for a subsequent assignee of a contract as the court held. Brief of Appellant at 15. On the other hand, defendants argue that the evidence failed to establish that Cooper Agency extended, arranged or offered credit on August 28, 1980. Brief of Appellee at 7.

The district court found that "Cooper Agency was not a 'creditor' as that term is defined in the Act in this consumer credit transaction." I R. 39.[3] We disagree, concluding that this finding was in error. *See Ford Motor Credit Co. v. Cenance*, 452 U.S. 155, 101 S.Ct. 2239, 68 L.Ed.2d 744 (1981) (per curiam); *Boncyk v. Cavanaugh Motors*, 673 F.2d 256 (9th Cir.1981). *See also Rudisell v. Fifth Third Bank*, 622 F.2d 243, 253 (6th Cir.1980). In *Cenance*, 452 U.S. at 157, 101 S.Ct. at 2240, the

---

**3.** The district court stated:

In this case, Bogue Brothers sold the washer and dryer to Sadie Eustace. Upon learning that she needed to finance this sale, the seller took her credit application and approved it unilaterally. Bogue Brothers did not seek credit approval from Cooper before consummating the sale nor did it notify Cooper of the transaction. Bogue Brothers filled out a blank retail installment contract which had been supplied to it by Cooper Agency, Inc., a New Mexico corporation which is an installment financing institution. Included in this retail installment contract was a printed paragraph relating to group creditor life insurance which referred to Cooper Agency, Inc. There was nothing else on the face of the contract to identify Cooper Agency, Inc. as the probable subsequent assignee of this retail installment contract.

The contract was signed by Sadie Eustace and L & G Home Furnishings. At the bottom of the form, this statement appeared, "[T]he foregoing security is hereby assigned under the terms of the Seller's RECOURSE, recommendation, assignment and guarantee on the reverse side hereof unless otherwise indicated." This sentence was followed by the signature of Charles Bogue, vice-president of Bogue Brothers d/b/a L & G Home Furnishings. The reverse side of the contract included references to Cooper Agency, Inc.

The statements of uncontroverted facts attached to the cross-motions for summary judgment establish that as a general practice, Bogue Brothers originally approves its credit transactions and extends credit to its consumers. As soon as possible thereafter, however, Bogue Brothers assigns its retail installment contracts to corporations, who in the normal course of their business, extend credit. These assignments are routinely recourse agreements and are seldom, if ever, rejected by the assignees. Cooper Agency regularly receives these assignments from Bogue Brothers but Bogue Brothers ultimately decides to which assignees it will send its retail installment contracts.

I R. 37–38.

As we explained in note 7, *infra,* we find that the district court was in error in stating in the last sentence of the penultimate paragraph above that "[t]he reverse side of the contract included references to Cooper Agency, Inc."

Supreme Court found that Ford Motor Credit Co. (FMCC), as the assignee from automobile dealers of retail installment contracts, was a creditor within the meaning of TILA, stating that

> a prospective purchaser of an automobile entered into an installment sales transaction with an automobile dealer. Prior to completion of the transaction the dealer submitted the buyer's credit application to petitioner Ford Motor Credit Co. (FMCC). Once the dealer was notified that the buyer met FMCC's credit standards, the buyer and the dealer executed a retail installment contract... Pursuant to the arrangement between the dealer and FMCC, FMCC purchased each contract without recourse against the dealer. Although FMCC did not assist in the actual negotiations, it provided the dealer with credit forms, including blank retail installment contracts. Although each did so, none of the dealers was obligated to seek financing from FMCC in perfecting its sales transaction.

*Id.* at 155–56, 101 S.Ct. at 2239–40. The Court quoted the following language from the opinion of the Fifth Circuit in *Cenance*, 621 F.2d 130, 133:

> "The *Meyers* [539 F.2d 511] analysis applies with even greater force to the instant situation because here the dealers regularly dealt only with Ford. The dealer and Ford prearranged for the assignment of the finance instrument. At no time did the risk of finance reside with the dealer. The transaction between dealer and automobile purchaser was conditioned upon acceptance of the credit application by Ford. Indeed, the credit application form was prepared by Ford. As in *Meyers* [539 F.2d 511], it would be elevating form over substance to hold that Ford was anything but an original creditor within the meaning of the Act and Regulation Z."

452 U.S. at 156–57, 101 S.Ct. at 2240–41. The Supreme Court concluded:

> Each dealer *arranged* for the extension of credit but FMCC actually *extended* the credit. The facts negate any suggestion that the dealers anticipated financing any of these transactions. The sales were contingent upon FMCC's approval of the credit worthiness of the buyer. The acceptance of the contract and the assignment became operational simultaneously, and the assignment divested the dealer of any risk in the transaction. In short, we agree with the Court of Appeals that it would be elevating form over substance to conclude that FMCC is not a creditor within the meaning of the Act. (footnote omitted) (emphasis in original).

*Id.* at 158, 101 S.Ct. at 2241.

Here Bogue Brothers had a dealer financing agreement with Cooper Agency which agreed to purchase security agreements and sales contracts from Bogue Brothers that were acceptable to Cooper Agency. Deposition of Charles Bogue at Ex. 1.[4] Bogue Brothers agreed to prepare

---

**4.** We noted earlier that the appellate record, as originally designated by plaintiff-appellant, did not include the deposition testimony of Engholm and Bogue, which is cited in plaintiff's appellate briefs. Defendants-appellees have moved to strike all portions of the Brief of Appellants which refer to these depositions. We also noted that a Motion to File Depositions was filed by plaintiffs in district court before trial. Defendants in their response below to this motion stated that "the motion and filings sought thereby are improper. Should the court deem it necessary to see such depositions, it has adequate means to obtain them and filing with the court is therefore not properly facilitated by a motion." Defendants went on to state that "all of the facts which were disputed among the parties are immaterial to resolution of the pending motions, and that all material facts are currently before the court." This motion was not ruled on by the district court before trial or the record on appeal was filed.

The appellate brief of plaintiff states that the trial judge's Memorandum Opinion and Order made findings based solely on the summary judgment record and relied "on deposition testimony never introduced at trial." Brief of Appellant 22. However the district court's memorandum discussed Mr. Bogue's contemplation that the retail installment contract would be subsequently assigned to Cooper Agency, citing, "testimony," but not identifying the witness or witnesses in question. In view of this state of the record, we entered an order on April 11, 1984, stating that "it is not clear from the Memorandum Opinion and Order whether deposi-

such contracts on forms satisfactory to and to be furnished by Cooper Agency. *Id.* Bogue Brothers also agreed to repurchase from Cooper Agency any note, contract or agreement which shall become ninety days or more delinquent. *Id.* Bogue Brothers did about 90% of its business on credit and assigned all of its installment contracts to a financing entity. *Id.* at 8, 10. Approximately 65% of these contracts were assigned to Cooper Agency with which Bogue Brothers had been doing business for about 10 years. *Id.* at 11–12.

Bogue Brothers was Cooper Agency's largest source of business. Deposition of Lowell G. Engholm at 11–12. If a customer passed Bogue Brothers' credit check, Bogue Brothers could prepare a contract which Cooper Agency would accept. Deposition of Bogue at 22. Cooper Agency played a role in passing on the credit worthiness of the purchasers only after the fact. Deposition of Engholm at 21. If Cooper Agency had a record that did not turn up in Bogue Brothers' credit investigation, Cooper Agency made them aware of it; otherwise, Cooper Agency relied on Bogue Brothers' credit evaluation. *Id.* During the time the two did business together, there were no more than two or three contracts which Bogue Brothers requested Cooper Agency to return and which Cooper Agency did not purchase. *Id.* at 18.

The major difference, then, between the transaction here and those in *Cenance* is that in *Cenance* the dealer first submitted the buyer's credit application to FMCC for approval. After the dealer was notified that the buyer met FMCC's credit standards, the buyer and dealer executed a retail installment contract. FMCC then purchased each installment contract without recourse against the dealer. Here Cooper Agency played a role in passing on the credit worthiness of the purchasers only after the fact. Cooper Agency purchased all but two or three of the contracts which Bogue Brothers assigned to it and Cooper Agency purchased the contracts with recourse against Bogue Brothers. There was no need for Cooper Agency to give prior approval to the buyer's credit application because Cooper Agency had recourse against Bogue Brothers. We are not convinced that this difference is significant. *See Jennings v. Edwards*, 454 F.Supp. 770, 773 n. 6 (M.D.N.Car.1978), *aff'd*, 598 F.2d 614 (4th Cir.1979).

In *Boncyk v. Cavanaugh Motors*, 673 F.2d 256 (9th Cir.1981), purchasers of used cars brought actions against the car dealers and the financing bank as creditors for violation of TILA. The financing bank claimed that it was not a creditor because it merely accepted the assignment of a completed credit agreement between the buyers and the dealers. At the time of the transactions in question there was in effect

tion testimony of Bogue and Engholm was presented to and considered by the District Court."

In that order we went on to state that "the civil docket sheet refers to a motion to include depositions in the record on appeal and to a response thereto, and apparently there was no order entered on the motion." Therefore, in our order we further stated that "this court deems it proper that the matter of supplementing the record be determined by the District Court on the basis of the evidence which was presented to it." We partially remanded this cause to the district court for its consideration and ruling on the motion to supplement the record on appeal. The following minute order was entered on April 13, 1984, by the district court:

By direction of the court: it is ordered that the Motion by Plaintiff to include depositions in the record on appeal is hereby granted.

Defendants argue that now including the depositions in the record would violate the local rules and put before us matters not considered by the district court. We note that Rule 8(c) of the Rules of the United States District Court for the District of New Mexico states that "unless otherwise ordered by the Court, depositions and the responses thereto shall not be routinely filed with the Court. Counsel, however, shall file a certificate with the Court indicating the date the deposition was taken." On October 15, 1981, a notice of the completion of the depositions of Engholm and Bogue was filed; the docket entry stated that the original transcripts were held by Richard J. Ruben.

In light of these circumstances and the fact that the district court ordered the depositions made part of the record, we find no error in the inclusion of the depositions. We deny the motion to strike and order the supplemental record filed.

an Automobile Dealer Agreement between the dealers and the financing bank. In this agreement, the bank required each dealer to submit evidence of insurance coverage for the vehicle or of the buyer's agreement to furnish insurance. The dealers, when making a credit sale of an automobile, never intended to carry the paper itself and during 1974 assigned to financial institutions all their automobile credit sales contracts. The agreement and disclosure statement was prepared by and furnished to the dealers by the financing bank. The bank accepted every contract offered it in 1974 by the dealers. Even before it received any documents concerning the transaction, the bank advised the dealer that the Hughes contract, the contract of one of the purchasers bringing suit, met the bank's standards for assignment. The bank assumed that contracts, written on the forms prepared and supplied by it, would be assigned to it. Both contracts in question were assigned to the bank on the same day the transaction took place. *Id.* at 258–59. The court concluded that

> [t]he position of the Bank in this case is virtually identical to that of FMCC in the *Cenance* case. We therefore conclude that the Bank is a creditor.

*Id.* at 259.

In *Boncyk*, as here, if the contract was written on forms prepared and supplied by the financing entity, approval of the assignment was given by the financing entity. We conclude that just as the financing bank in *Boncyk* was a creditor, Cooper Agency is also a creditor within the definition of TILA. The Eighth Circuit has pointed out that

> [i]n interpreting the Act, the Federal Reserve Board and the majority of courts have focused on the substance, rather than the form, of credit transactions, and have looked to the practices of the trade, the course of dealing of the parties, and the intention of the parties in addition to specific contractual obligations.

*Joseph v. Norman's Health Club, Inc.,* 532 F.2d 86, 90 (8th Cir.1976). Moreover the Supreme Court has noted that

> [t]he hearings held by Congress reflect the difficulty of the task it sought to accomplish. Whatever legislation was passed had to deal not only with the myriad forms in which credit transactions then occurred, but also with those which would be devised in the future ... The language employed evinces the awareness of Congress that some creditors would attempt to characterize their transactions so as to fall one step outside whatever boundary Congress attempted to establish.

*Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 365, 93 S.Ct. 1652, 1658, 36 L.Ed.2d 318 (1973).

Here the record shows that Bogue Brothers had a dealer financing agreement with Cooper Agency under which Cooper Agency agreed to purchase security agreements and sales contracts from Bogue Brothers which were acceptable to Cooper Agency. Bogue Brothers agreed to prepare such contracts on forms satisfactory to and to be furnished by Cooper Agency. Bogue Brothers assigned all of its installment contracts, 65% of which were assigned to Cooper Agency, with which Bogue Brothers had been doing business for about 10 years. During the time the two did business together there were no more than two or three contracts which Bogue Brothers requested Cooper Agency to return and which Cooper Agency did not purchase. On these facts we hold that Cooper Agency was a creditor within the definition of TILA.

### IV

■ Defendants say that even if Cooper Agency was a creditor in the transaction, any failure to disclose that fact was only a technical violation of the Act and recovery is not warranted, relying in part on the Truth-in-Lending Simplification and Reform Act, 94 Stat. 168, 15 U.S.C.A. § 1601 *et seq.* Defendants maintain that with those amendments, it became clear that Congress did not intend that the identity of every potential creditor be treated as material, citing the legislative history of the

Simplification Act. Brief of Appellee at 9, 12. We feel that in a case like this which arose at about the time of *Cenance*, we must apply the *Cenance* interpretation of the notification requirements, and of the term "creditor."[5] TILA mandates that each creditor must be clearly identified.[6] The court in *Boncyk* noted that "it is implicit in the opinion of the Court in *Cenance* that a failure to clearly identify each creditor is a failure to disclose which imposes liability under the TILA." *Boncyk*, 673 F.2d 260.

It is true that the Court stated in *Cenance*, "the statement notifying the buyer that the contract was, upon acceptance, assigned to FMCC served the purpose of the Act by disclosing the nature of the relationship of the finance company to the transaction." *Cenance*, 452 U.S. at 159, 101 S.Ct. at 2241. However, here although Eustace's copy of the contract stated "[t]he foregoing security is hereby assigned under the terms of the Seller's Recourse,

recommendation, Assignment and Guaranty on the reverse side hereof unless otherwise indicated," her copy did *not* contain on the reverse side the printed language entitled "Seller's Recommendation, Assignment and Guaranty (With Recourse)," or a statement that the contract was assigned to Cooper Agency. I R. 6.[7] While Eustace's copy did contain a reference to the "Group Creditor Life Policy, pursuant to the agency agreement of Cooper Agency, Inc," I R. 5, this statement did not clearly identify Cooper Agency as a *creditor*.

Defendants further argue that plaintiff admitted at trial that all material facts were known to her before she entered into the transaction. Brief of Appellees 10. In this connection, plaintiff did acknowledge she was making payments directly to Cooper Agency. She was asked whether she was contending that she did not know Cooper Agency was a creditor and replied "I guess not." III R. 14. However, a show-

---

**5.** It is true that in *James v. Ford Motor Credit Company*, 638 F.2d 147 (10th Cir.1980), *vacated in part on other grounds, cert. denied in part*, 453 U.S. 901, 101 S.Ct. 3134, 69 L.Ed.2d 988 (1981), we did consider the legislative history of the Simplification Act in a case which arose before the effective date of that Act. Here, however, we cannot agree with the defendants that the legislative history of the Simplification Act supports their position. As explained in the text, *infra*, we are convinced that the plain terms of the statute and regulations, applicable at the time of this transaction, on both the definition of "creditor" and the required disclosures clearly mandate the disclosure of the identity of Cooper Agency as a multiple "creditor."

**6.** The regulation provides:
Credit other than open end—specific disclosures.
(a) *General rule.* Any creditor when extending credit other than open end credit shall, in accordance with § 226.6 and to the extent applicable, make the disclosures required by this section with respect to any transaction consummated on or after July 1, 1969. Except as otherwise provided in this section, such disclosures shall be made before the transaction is consummated. At the time disclosures are made, the creditor shall furnish the customer with a duplicate of the instrument or a statement by which the required disclosures are made and on which the creditor is identified. All of the disclosures shall be made together on either:

(1) The note or other instrument evidencing the obligation on the same side of the page and above the place for the customer's signature; or
(2) One side of a separate statement which identifies the transaction.
12 C.F.R. § 226.8 (1980).
Further the regulation provides that
(d) *Multiple creditors or lessors; joint disclosure.* If there is more than one creditor or lessor in a transaction, each creditor or lessor shall be clearly identified and shall be responsible for making only those disclosures required by this Part which are within his knowledge and the purview of his relationship with the customer or lessee. If two or more creditors or lessors make a joint disclosure, each creditor or lessor shall be clearly identified.
12 C.F.R. § 226.6 (1980).

**7.** We note that the district court stated that the reverse side of Eustace's contract included references to Cooper Agency. I R. 38. We believe this statement is in error due to the parties' agreement that Eustace's copy did not contain on the reverse side the printed language entitled "Seller's Recommendation, Assignment and Guaranty (With Recourse)." I R. 12, 23. Defendants also admitted the correctness of plaintiff's Exhibit A to the complaint, the reverse side of which did not contain the quoted language or a statement that the contract was assigned to Cooper Agency. I R. 2, 7.

ing that the creditor had actual knowledge does not excuse a failure to comply with the mandatory disclosure requirements, or prevent recovery under the mandatory remedial provisions of the Act and the regulations. *Lauletta v. Valley Buick, Inc.,* 421 F.Supp. 1036, 1040 (W.D.Pa.1976); *Desselles v. Mossy Motors, Inc.,* 442 F.Supp. 897, 901–02 (E.D.La.1978). "The identification [of the creditor] must be made on the disclosure statement even if the creditor has actual knowledge of the seller's precise role in the financing transaction." *Whitlock v. Midwest Acceptance `Corp.,* 575 F.2d 652, 654 (8th Cir.1978).

We conclude that Eustace's contract did not clearly notify her of the assignment to Cooper Agency or its status as a creditor, and hold that the mandatory disclosure requirements of TILA, as interpreted by *Cenance,* were not met.

### V

Accordingly, the judgment is reversed and the case is remanded to the district court for further proceedings and the granting of relief afforded by the Act.