[Nos. B142818, B147800, B147801, B151005. Second Dist., Div. Two. Jan. 15, 2003.]

JOSEPH A. BESCOS, Plaintiff and Appellant, v.
BANK OF AMERICA, NT & SA, Defendant and Respondent.

**COUNSEL**

Law Offices of Sharon L. Kinsey and Sharon L. Kinsey for Plaintiff and Appellant.

Goldstein & Ward and Jonathan A. Goldstein for Defendant and Respondent.

**OPINION**

**DOI TODD, J.**—In this appeal from a summary judgment, the primary issue is whether a lending institution, which finances a vehicle lease but is not an agent of the automobile dealer in the lease transaction, may be responsible as a *lessor* for misrepresentations made by the dealer in violation of the California Vehicle Leasing Act (Civ. Code, § 2985.7 et seq.), when the misrepresentations were unknown to the lending institution and not apparent on the face of the leasing agreement. We affirm the judgment in favor of the lending institution, finding that appellant lessee did not raise a triable issue of material fact that the lending institution was substantially involved in the leasing transaction so as to be considered a *lessor*.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff and appellant Joseph A. Bescos sued Vince Wiese Chevrolet, doing business as Scott Irvin Chevrolet, an automobile dealer from which he leased a vehicle, and respondent Bank of America, NT & SA, which financed the lease. Appellant sought damages for misrepresentations in the vehicle lease transaction, asserting violations of the California Vehicle Leasing Act (Civ. Code, § 2985.7 et seq., hereafter VLA)[1] and the Consumers Legal Remedies Act (§ 1750 et seq., hereafter CLRA).

It was appellant's position that the dealer had the statutory obligation to make certain disclosures as a lessor under the VLA, and that the dealer's

---

[1]Further statutory references are to the Civil Code, unless otherwise noted.

failure to make those disclosures violated the VLA and damaged appellant. Appellant also asserted that the bank, an assignee of the lease agreement, should be considered a lessor under the VLA, and should therefore be liable for the dealer's misrepresentations, even if those misrepresentations were unknown to the bank and not apparent from the face of the lease agreement, because of the bank's involvement with the lease transaction.

Appellant sought rescission of the lease agreement, restitution of all consideration paid, and penalties from the dealer and the bank. Appellant claimed that the bank, as the assignee and holder of the lease agreement, was liable for the amount of the obligation owed to the bank at the time of the assignment, and claimed actual damages of approximately $60,000. Appellant also claimed that the perpetration of the misrepresentations violated the CLRA.

The case was settled between appellant and the dealer, but litigated between appellant and the bank through a summary judgment motion brought by the bank. The trial court found no liability on the part of the bank and granted summary judgment in favor of the bank, awarding it attorney fees and costs of $16,474. This is an appeal from the summary judgment and from denial of appellant's motion to tax costs.

Appellant also filed a second suit against the bank, which was dismissed after the trial court sustained without leave to amend the bank's demurrer on the ground that the first case was pending and involved the same matter between the parties. Appellant also appealed from this judgment, and the trial court's award of attorney fees and costs in the amount of $6,055. The appeals have been consolidated.

*The summary judgment motion.*

In its motion for summary judgment, the bank contended that even if there were misrepresentations made by the dealer to the lessee in the lease transaction, as an assignee of the lease agreement, the bank was not responsible because it had no knowledge of the misrepresentations, and the misrepresentations were not apparent on the face of the documents. For purposes of the summary judgment motion, the bank conceded in its separate statement that the facts as alleged by appellant in appellant's complaint with respect to the misrepresentations were true. The bank's motion offered the following "undisputed facts":

In March 1998, appellant entered into a 48-month vehicle lease agreement with the dealer for a new 1999 Chevrolet Suburban, trading in a 1995

Chevrolet Camaro. The new vehicle was primarily for personal, family and household purposes. Appellant dealt solely with the dealer in negotiating the lease and had no communication with the bank. The bank was not involved in the negotiation of the lease agreement between appellant and dealer. The dealer submitted the lease agreement to the bank for review, and the bank agreed to accept assignment of the lease agreement. Other than to provide appellant with a welcome letter and monthly statements, there was no communication between appellant and the bank.

Appellant's claim of wrongdoing was that the dealer made certain misrepresentations to him as follows: the lease agreement stated that appellant had "agreed upon" a value of $38,444.65 for the Suburban, but the manufacturer's suggested retail price for the vehicle was $34,715; the dealer suppressed the cost of an alarm system installed in the vehicle; and "the trade-in value of the Camaro was $12,500, its loan balance was $17,140, and the dealer indicated such $4,640 difference would be paid by (appellant) making lease payments for one extra year, whereas the total of an extra year of lease payments is $6,705.84."

The bank's separate statement also included that at the time the dealer assigned the lease agreement to the bank, the bank had no knowledge or notice of any purported violations of the VLA or the CLRA, that "any purported defects in the lease transaction were not apparent on the face of the lease agreement," and that the dealer "is not the agent of [the bank] concerning the lease transaction."

In opposing the motion, appellant agreed that all the facts in the bank's separate statement were true, but argued that given those facts, he must prevail as a matter of state and federal law. He argued that (1) the bank was not a holder in due course and therefore stood in the shoes of the assignor, (2) the assignment of rights under the lease was also a delegation of duties and the bank's acceptance of the assignment was a promise to perform under the contract enforceable by appellant, and (3) under federal and state law, the holder of the contract is liable for the lessee's claims against the lessor up to the amount owed on the contract at the time of the assignment.

The bank replied, stating that the arguments based on federal law should not be considered by the trial court because appellant had failed to provide copies of the referenced federal statutes and cases. The bank also argued that the affirmative relief appellant sought under the VLA and the CLRA against the dealer was not available against the bank because the bank had not filed a cross-complaint or initiated any legal action against appellant.

The trial court granted the motion for summary judgment, stating in part: "Since moving party [the bank] has not instituted legal action, affirmative

relief requested cannot be based upon assignment and there is an absence of evidence of agency."

CONTENTIONS ON APPEAL

Appellant contends the trial court erred as a matter of law in granting the summary judgment, arguing as follows:

1. The bank is liable as a lessor.

2. Even if the bank is merely an assignee and not also a lessor, it is liable for any violation of the VLA that appears on the face of the lease agreement, which, in the instant case, is the omission of a holder notice required by the Federal Trade Commission Act (15 U.S.C. § 41 et seq.).

3. Appellant has the right to bring affirmative claims against the assignee pursuant to the VLA, section 2986.10, subdivision (a).

4. The bank is liable under the CLRA as the assignee because of the omission of the Federal Trade Commission notice and because there are triable issues of fact regarding whether the dealer acted as the bank's agent in arranging the financing of the lease.

DISCUSSION

A. *The Summary Judgment Motion*

A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) ■ The review accorded a grant of summary judgment is de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 [107 Cal.Rptr.2d 841, 24 P.3d 493].) A defendant moving for summary judgment has met its burden of showing that a cause of action has no merit if it has shown that one or more elements of the cause of action cannot be established, or that there is a complete defense to that cause of action. Once the defendant has met that burden, the burden shifts to the plaintiff to show that a triable issue of one or more material facts exists as to that cause of action or defense thereto. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 849.)

We independently review the record before the trial court to determine whether the facts shown by the parties give rise to a material issue of fact. (*Fraizer v. Velkura* (2001) 91 Cal.App.4th 942, 945 [110 Cal.Rptr.2d 918].)

1. *The Statutory Framework Under Federal and State Law*

a. *Title 15 of the United States Code*

Title 15 of the United States Code, designated Commerce and Trade, contains two chapters important to the understanding of this case: (a) chapter 2, the Federal Trade Commission Act, which has as its mandate, inter alia, the protection of the public interest by preventing unfair methods of competition (15 U.S.C. § 41 et seq.), and (b) chapter 41, designated Consumer Credit Protection, which sets forth the federal Truth in Lending Act (sometimes referred to as TILA), enacted in 1968 (15 U.S.C. § 1601 et seq.). TILA has as one of its goals the informed use of credit through "meaningful disclosure of credit terms" to consumers. (15 U.S.C. § 1601.)

TILA, in turn, includes the federal Consumer Leasing Act (15 U.S.C. § 1667 et seq.), enacted in 1976 as an amendment to TILA because consumer leases were increasingly being used as an alternative to credit purchases. The purpose of the Consumer Leasing Act, as stated in the accompanying Senate Report, was "to provide consumers with meaningful information about the component and aggregate costs of consumer leases, so that they can make better informed choices between leases, and between leases and credit sales." (Sen.Rep. No. 94-590 (1976), reprinted in 1976 U.S. Code Cong. & Admin. News, pp. 431, 432; *Applebaum v. Nissan Motor Acceptance Corp.* (3d Cir. 2000) 226 F.3d 214, 218.) The federal Consumer Leasing Act generally applies to a lease for the use of personal property for a period exceeding four months and having a "total contractual obligation" not exceeding $25,000. (15 U.S.C. § 1667(1); 12 C.F.R. § 213, Supp. I, Commentary, 2(e)-3 (2002); *Turner v. General Motors Acceptance Corp.* (2d Cir. 1999) 180 F.3d 451, 454, fn. 2.)[2] TILA's definition, damage, and rules of construction provisions apply to the federal Consumer Leasing Act in the absence of more specific provisions and regulations. (See, e.g., 15 U.S.C. §§ 1602(a), 1602(b), 1604(a), 1607(d), 1640, 1667, 1667d, 1667f; *Gaydos v. Huntington Nat. Bank* (N.D. Ohio 1996) 941 F.Supp. 669, 675.)

b. *The Code of Federal Regulations*

The Code of Federal Regulations includes regulations relating to TILA that are promulgated by the Board of Governors of the Federal Reserve System (Board). (15 U.S.C. §§ 1604, 1667f.) Regulation Z (12 C.F.R. § 226.1 et seq. (2002)) and related Official Staff Commentary (hereafter Commentary) generally implement TILA as a whole. Regulation M (12

---

[2]Neither party to this appeal disputes the applicability of the federal Consumer Leasing Act to appellant's lease.

C.F.R. § 213.1 et seq. (2002)) and related Commentary specifically address the federal Consumer Leasing Act within TILA.

### c. *The California Vehicle Leasing Act (VLA)*

The VLA (§ 2985.7 et seq.) regulates the lease of motor vehicles used primarily for personal, family or household use. Under the terms of the VLA, a lessor is required to make certain disclosures in the lease to the lessee, which include a statement of an agreed-upon value of the leased vehicle and any trade-in vehicle (§ 2985.8, subd. (c)(2)(A) & (4)).[3] The VLA also provides that the lessee may obtain remedies under certain circumstances against the lessor, such as the recovery of actual damages, rescission, and attorney fees and costs, for failure of the lessor to comply with the provisions of the act. (See, e.g., §§ 2988.5, 2988.7, 2988.9.) The VLA references the disclosure requirements of Regulation M of the Code of Federal Regulations and provides that they are required disclosures under the VLA. (§§ 2985.7, subd. (e), 2985.71, subd. (b)(1), 2985.8, subd. (c)(1), 2987, subd. (c).)[4]

### d. *The California Consumers Legal Remedies Act (CLRA)*

The CLRA (§ 1750 et seq.) has as one of its purposes the protection of consumers "against unfair and deceptive business practices." (§ 1760.) The remedies it provides are cumulative to any other procedures or remedies for any violation or conduct provided for in any other law. (§ 1752.)

---

[3]A lease agreement frequently will serve as the disclosure statement, as it did here where the document included the statement: "I understand that the consumer lease disclosures you have included in this Lease are also made on behalf of BancAmerica Auto Finance Corp. ('BAAF') to whom you intend to assign this Lease after I sign it."

[4]Section 2985.7, setting forth definitions, provides as relevant: " 'Regulation M' means any rule, regulation, or interpretation promulgated by the Board of Governors of the Federal Reserve System under the federal Consumer Leasing Act (15 U.S.C. Secs. 1667-1667e), and any interpretation or approval issued by an official or employee of the of the Federal Reserve System duly authorized by the board to issue such interpretations or approvals." (§ 2985.7, subd. (e).)

Section 2985.71, subdivision (b)(1) provides that "[a]ll of the disclosures prescribed by Regulation M set forth in the manner required or permitted by Regulation M, whether or not Regulation M applies to the transaction" must be included in any solicitation to enter a lease contract involving an amount of payment and certain capitalized cost statements.

Section 2985.8, subdivision (c) reads in part: "Every lease contract shall disclose all of the following: [¶] (1) All of the information prescribed by Regulation M set forth in the manner required or permitted by Regulation M, whether or not Regulation M applies to the transaction."

Section 2987, subdivision (c), dealing with the lessee's liability on termination of a lease contract, references appraisals conducted pursuant to regulation M requirements.

## 2. *Was the bank a lessor within the meaning of the VLA?*

■ Under both state and federal law, lessors of vehicles for personal use are required to make certain disclosures to consumer lessees and are liable for certain damages and penalties for failing to do so. (15 U.S.C. §§ 1667, 1667a; Civ. Code, §§ 2985.8, subd. (c), 2988.5, subd. (a).) But an *assignee* of a lease agreement is only liable for defects apparent on the face of the document. (15 U.S.C. § 1641(a); Civ. Code, § 2988.5, subd. (e).)[5]

Appellant contends that the bank was not merely the assignee of the lease agreement but also a lessor, along with the dealer, under the federal Consumer Leasing Act, and under the VLA by virtue of regulation M and related Commentary. If the bank were considered a lessor rather than simply an assignee, its liability would include any dealer misstatements in the written lease agreement that are in violation of disclosure requirements. Under both state and federal law, this additional liability would result in the bank being jointly and severally liable with the dealer for any actual damages sustained as a result of the failure of the dealer to comply with federal disclosure requirements, as well as the costs of suit and reasonable attorney fees. (15 U.S.C. § 1640(a); Civ. Code, § 2988.5, subd. (a).)

"Lessor" is defined in the VLA as "a person who is engaged in the business of leasing, offering to lease or arranging the lease of a motor vehicle under a lease contract." (§ 2985.7, subd. (b).) The term is similarly defined in the federal Consumer Leasing Act, as "a person who is regularly engaged in leasing, offering to lease, or arranging to lease under a consumer lease." (15 U.S.C. § 1667(3).)

Appellant relies on *Ford Motor Credit Co. v. Cenance* (1981) 452 U.S. 155 [101 S.Ct. 2239, 68 L.Ed.2d 744] *(Cenance)* and *Boncyk v. Cavanaugh Motors* (9th Cir. 1981) 673 F.2d 256 *(Boncyk)*, to support his contention that

---

[5]Applicable federal law states: "Except as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter or proceeding under section 1607 [Federal Deposit Insurance Corporation enforces bank compliance with TILA] which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is *apparent on the face* of the disclosure statement . . . . For the purpose of this section, a violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter." (15 U.S.C. § 1641(a), italics added.)

Section 2988.5, subdivision (e) reads: "Except as otherwise specifically provided in this chapter, any civil action for a violation of this chapter which may be brought against the original lessor in any lease transaction may be maintained against any subsequent assignee of the original lessor where the violation from which the alleged liability arose is *apparent on the face* of the instrument assigned . . . ." (Italics added.)

the bank was a lessor in this transaction. Both cases dealt with vehicle *installment sale* agreements, rather than vehicle *lease* agreements and with a definition of *"creditor"* under the TILA, before its amendment in 1980. *"Creditor"* was then defined as follows: "The term 'creditor' refers only to creditors who regularly extend, or arrange for the extension of, credit for which the payment of a finance charge is required, whether in connection with loans, sales of property or services, or otherwise." (Pub.L. No. 90-321, § 103(f), 82 Stat. 146, reprinted at 1968 U.S. Code Cong. & Admin. News, p. 177.) The court in *Cenance* concluded that this definition included both the dealer and the financial institution since the dealer arranged for the extension of credit and Ford Motor Credit Company actually extended the credit. (*Cenance*, at p. 158.) The court in *Boncyk* relied on *Cenance,* and rejected the financial institution's claim that it was not a creditor because it merely accepted the assignment of a completed credit agreement between the buyers and the dealers. (See *Boncyk*, at pp. 258-259.) As *creditors*, both the dealer and the financial institution were subject to TILA disclosure requirements, which meant in practical terms that the financial institution faced joint and several liability with the dealer for the dealer's failure to accurately disclose the information required pursuant to TILA. (15 U.S.C. § 1640.)

In 1980, Congress amended TILA and passed the Truth in Lending Simplification and Reform Act. The amendment included a change in the definition of "creditor," limiting it to refer "only to a person who *both* (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required; and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness . . . ." (15 U.S.C. § 1602(f); Pub.L. No. 96-221, § 602(a), 94 Stat. 168, italics added.)[6]

There is no similar express limitation in the Consumer Leasing Act definition of "lessor." Instead, the Commentary to regulation M of the

---

[6]Both the Senate Report and the House of Representatives Conference Report regarding the 1980 amendment to the definition of "creditor" stated: "This section simplifies the definition of 'creditor' by specifying that it applies to a person who regularly extends credit and is the person to whom a debt is initially payable on its face. This will eliminate confusion under the current act as to the responsibilities of assignees and 'arrangers of credit.' This revision was recommended by the Federal Reserve Board." (Sen.Rep. No. 96-73, p. 10 (1980), reprinted in 1980 U.S. Code Cong. & Admin. News, p. 287; House Conf. Rep. No. 96-842, p. 24 (1980), reprinted in 1980 U.S. Code Cong. & Admin. News, p. 259.)

federal Consumer Leasing Act[7] (hereafter Regulation M Commentary) provides that "[a]n assignee may be a lessor for purposes of the regulation in circumstances where the assignee has *substantial involvement* in the lease transaction." (12 C.F.R. § 213, Supp. I, Reg. M Commentary § 213.2(h)-3 (2002), italics added.) The Regulation M Commentary references *Cenance*, noting that it held that an assignee was a creditor for purposes of the pre-1980 TILA and regulation Z because of its substantial involvement in the credit transaction. (*Ibid.*)[8]

Our research has not disclosed any reported case addressing the Regulation M Commentary. Appellant argues that in light of the Regulation M Commentary and the absence of any limitation in the definition of "lessor," as under the former definition of "creditor," the bank here is in the identical position of the lending institution in *Cenance*, i.e., a *creditor* along with the dealer.

While it may be argued that the roles played by the financial institutions involved in *Cenance* and *Boncyk* and the role of the bank in the instant case are structurally identical, the critical difference is that the financial institutions in *Cenance* and *Boncyk extended credit*, bringing them squarely within the statutory definition of "creditor." That was the clear holding of *Cenance*. It is not altogether clear that the discussion of the particular involvement of the financial institution's participation in the installment sales transaction was necessary to the opinion, except to clarify that the bank did indeed extend credit, and there was no indication that the dealer ever intended to extend credit. In any event, we disagree with the statement in Regulation M Commentary that *Cenance* held the assignee to be a creditor based on its substantial involvement in the credit transaction.

Under the VLA, an assignee may be considered a lessor only if the assignee has a substantial involvement in the lease transaction. Whether an assignee can be considered a lessor in a particular transaction necessarily turns on the specific facts of the case. While the undisputed facts establish that the bank provided the credit application and lease forms to the dealer,

---

[7]Commentary to the Code of Federal Regulations regulation Z regarding TILA provides: "The definitions relating specifically to consumer leases are now found in the separate consumer leasing regulation, Regulation M (12 C.F.R. Part 213)." (TILA reg. Z, 12 C.F.R. § 226, Supp. I, Commentary, 2(b), References (2002).)

[8]Appellant and the dealer entered into the lease agreement on March 8, 1998. The regulation M definition of "lessor" has survived revision of the regulation (Reg. M, 61 Fed.Reg. 52246, 52258 (Oct. 7, 1996), as amended at 62 Fed.Reg. 15364, 15367 (Apr. 1, 1997)), and the Regulation M Commentary remains after several revisions (Reg. M, 62 Fed.Reg. 16053, 16058 (Apr. 4, 1997), as amended at 63 Fed.Reg. 52115, 52115 (Sept. 29, 1998), 64 Fed.Reg. 16612, 16613, 16614 (Apr. 6, 1999), 66 Fed.Reg. 17322, 17328 (Mar. 30, 2001)).

the lessee and the dealer completed the lease transaction without any involvement of the bank in the negotiations. We cannot say that the fact that the bank reviewed the application to determine whether the lessee met its credit standards amounted to "substantial involvement in the lease transaction," enlarging the statutory limitation on the bank's liability to include misrepresentations not apparent on the face of the documents. Some greater involvement in the negotiations of the lease itself, rather than simply approving the credit worthiness of the lessee, is required to constitute "substantial involvement."

Nor would it serve the public policy or the legislative purpose of the VLA to insure that the consumer is informed of all of the ramifications of leasing a vehicle to extend liability to the lender under the factual circumstances established here. It would place a significant burden on a financial institution to be required to ascertain that the lessee and the dealer actually had "agreed upon" a particular value in order to shield itself from liability in every lease transaction. When the cost of monitoring and investigation is added to that of the litigation that often results from the acts of allegedly errant dealers, as has occurred here, it can be expected to increase interest rates and, ultimately, to shrink the availability of credit. Such a result does not ultimately assist the consumer. (See discussion in *Taylor v. Quality Hyundi, Inc.* (7th Cir. 1998) 150 F.3d 689, 694 [duty of banks limited to inspection for facial defects in TILA vehicle installment sales agreements].) In contrast, a more limited facial-defect liability (15 U.S.C. § 1641(a)) is appropriate since many financial institutions create credit application and leasing forms and provide them to vehicle dealers who are in the best position to ensure compliance with related TILA requirements.

The summary judgment is affirmed. Appellant has failed to demonstrate that a triable issue of material fact exists showing that the bank's liability is greater than that of an assignee in the lease transaction, in that there are insufficient facts to establish the bank's substantial involvement in the lease transaction.

### 3. *Purported Violation Apparent on the Face of the Lease Agreement*

■ Appellant contends that the lease form used in this transaction, which was prepared by the bank, failed to include a notice required in all consumer credit contracts by regulation 16 of the Code of Federal Regulations part 433.2 (2002) that the holder of the contract is subject to all claims and defenses which the debtor could assert against the seller of goods and services (the FTC Holder Rule), and that the bank is therefore in violation of

the CLRA independent of any wrongdoing by the dealer.[9] This is the first time this matter has been raised. The bank does not address this issue directly but urges that matters not before the trial court be considered as beyond the scope of the record on appeal.

Appellant, in opposing the bank's motion for summary judgment, agreed that all facts in the bank's separate statement were undisputed. Included among those undisputed facts was a statement setting forth the specific claims of wrongdoing being asserted against the bank, as well as a concession that "any purported violations of the Consumers Legal Remedies Act . . . were not apparent on the face of the lease agreement in this case." There were no claims with respect to the FTC Holder Rule included among the claims of wrongdoing.

We address the issue because it is a question of law and conclude appellant's contention has no merit.

Regulation 16 of the Code of Federal Regulations part 433.2 (2002) provides, as relevant here:

"In connection with any sale or lease of goods or services to consumers, in or affecting *commerce as 'commerce' is defined in the Federal Trade Commission Act*, it is an unfair or deceptive act or practice within the meaning of section 5 of that Act for a seller, directly or indirectly, to:

"(a) Take or receive a *consumer credit contract* which fails to contain the following provision in at least ten point, bold face, type:

"NOTICE

"ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR

---

[9]Section 2988.5, subdivision (e) reads: "Except as otherwise specifically provided in this chapter, any civil action for a violation of this chapter which may be brought against the original lessor in any lease transaction may be maintained against any subsequent assignee of the original lessor where the violation from which the alleged liability arose is apparent on the face of the instrument assigned unless the assignment is involuntary."

The federal legislation is found at 15 United States Code section 1641(a) and provides as pertinent: "Except as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter . . . which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary. For the purpose of this section, a violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter."

COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF, RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER." (Italics added.)

Section 44 of the Federal Trade Commission Act defines "commerce" as follows: " 'Commerce' means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation." (15 U.S.C. § 44.) "Commerce" as used in section 44 of the FTC Act means interstate commerce. (*Chas. A. Brewer & Sons v. Federal Trade Com'n* (6th Cir. 1946) 158 F.2d 74, 76.)

Here, the lease transaction, including the assignment to the bank, occurred entirely within California. The fact that the vehicles involved in the subject lease agreement may have been manufactured outside California is irrelevant. (See, e.g., *Winslow v. Federal Trade Commission* (4th Cir. 1921) 277 Fed. 206, 209-211, cert. den. (1922) 258 U.S. 618 [42 S.Ct. 271, 66 L.Ed. 793] [sales within state by ship chandlers to captains of foreign and domestic vessels of goods manufactured out of state are not governed by Federal Trade Commission Act].) Furthermore, the lease agreement does not qualify as a "consumer credit contract." (16 C.F.R. § 433.1 (2002), 12 C.F.R. § 226.2(a)(16) (2002); *LaChapelle v. Toyota Motor Credit Corp.* (2002) 102 Cal.App.4th 977 [126 Cal.Rptr.2d 32].) Thus, the FTC Holder Rule does not apply to the facts of this case.

### 4. *Claim of Affirmative Relief Under State Law Against Bank as Assignee*

As previously noted, the trial court granted the bank's summary judgment motion based in part on its conclusion that appellant could not obtain affirmative relief under the circumstances of this case since the bank had not filed a cross-complaint or initiated any legal action against appellant. Appellant contends he has a right to bring affirmative claims for rescission (§ 2988.7) and damages (§ 2988.5) against the bank as the assignee of the dealer, pursuant to section 2986.10, subdivision (a) of the VLA, which

provides that an assignee is subject to all equities and defenses the lessee has against the lessor.[10]

The sole case to address this issue is *LaChapelle v. Toyota Motor Credit Corp., supra*, 102 Cal.App.4th 977. After a review of the legislative history of similar provisions in the Unruh Act, addressing retail installment sales generally (§§ 1801 et seq., 1804.2), and the Rees-Levering Act, addressing retail installment sales of vehicles (§§ 2981 et seq., 2983.5), as well as the legislative history of section 2986.10, the *LaChapelle* court concluded that the Legislature had intended "to carry forward consumers' existing common law rights against assignees as an adjunct to consumer protection legislation" but only when a violation appeared on the face of the contract. (*LaChapelle*, at p. 989.) We agree with the analysis in *LaChapelle*. It was undisputed for the purposes of the summary judgment motion that there are no facial defects here; we find appellant had no right to affirmative relief against the bank.

Appellant further argues that claims against lease assignees must be allowed in order for section 2986.10 to be consistent with the California Uniform Commercial Code (Uniform Commercial Code). Appellant first cites former Uniform Commercial Code section 10303, subdivision (f), which provides that the transfer of a lease is a delegation of duties.[11] This statute is inapplicable because any duties of the dealer were executed at the time appellant and the dealer entered the lease agreement. "The dealer could not delegate to respondents the duty to do something that was done before the assignment. [Appellant] is arguing that respondents are responsible for the lessor's failure to comply with its statutory duties. Nothing in [Uniform Commercial Code] section 10303 suggests that an assignment includes a duty to guarantee that the assignor's previously-executed contractual duties were performed properly." (*LaChapelle v. Toyota Motor Credit Corp., supra*, 102 Cal.App.4th at p. 990.)

### 5. *The Consumers Legal Remedies Act Claim*

■ Appellant contends the bank is liable under the CLRA (§ 1750 et seq.), asserting that the omission of the FTC Holder Rule notice (16 C.F.R.

---

[10]Section 2986.10, subdivision (a) reads: "An assignee of the lessor's rights is subject to all equities and defenses of the lessee against the lessor, notwithstanding an agreement to the contrary, but the assignee's liability may not exceed the amount of the obligation owing to the assignee at the time of the assignment."

[11]Former Uniform Commercial Code section 10303, subdivision (f) (now, without change, subd. (e) pursuant to Stats. 1999, ch. 991, § 37) provides: "A transfer of 'the lease' or of 'all my rights under the lease,' or a transfer in similar general terms, is a transfer of rights and, unless the language or the circumstances, as in a transfer for security, indicate the contrary, the transfer is a delegation of duties by the transferor to the transferee. Acceptance by the transferee constitutes a promise by the transferee to perform those duties. The promise is enforceable by either the transferor or the other party to the lease contract."

§ 433.2 (2002)) from the bank's lease agreement form constitutes an unfair and deceptive practice and that there are triable issues of fact regarding whether the dealer acted as the bank's agent in arranging the lease financing. We disagree.

The CLRA has as its purpose "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." (§ 1760.) It is to be liberally construed, and its remedies are cumulative. (*Ibid.*; § 1752.) Section 1770 prohibits a variety of deceptive practices.

First, as previously discussed, the bank was not required to include the Federal Trade Commission holder notice in its lease agreement forms.

Second, the alleged failure of the dealer to comply with the disclosure requirements under state and federal law in the *written* lease agreement, the only acts of the dealer for which the bank can be held liable as a lessor, do not fall within the deceptive practices set forth under section 1770.

What remains is appellant's argument that there are triable issues of material fact as to whether the dealer acted as the bank's agent "in arranging the lease financing" and therefore should be held liable on that basis not only for the dealer's failure to comply with particular state and federal disclosure requirements in the lease agreement but also for the dealer's oral misrepresentations. The bank cites section 2295: "An agent is one who represents another, called the principal, in dealings with third persons."

The bank's separate statement of undisputed facts, which appellant adopted, states that the dealer was not the agent of the bank with respect to the subject lease transaction. The bank offered the following evidence in support of the motion: (1) the vehicle-lease dealer agreement between the dealer and the bank, which included the following statement: "Dealer, including, without limitation, its employees and salespersons, have not represented that Dealer is the agent of Bank," (2) the lease agreement, which includes the statement "I understand that the consumer lease disclosures you have included in this Lease are also made on behalf of BancAmerica Auto Finance Corp. ('BAAF'), to whom you intend to assign this Lease after I sign it," and (3) appellant's answers to interrogatories, which included his statement that he believed the bank and dealer were agents of each other because the bank provided the lease form.

*LaChapelle v. Toyota Motor Credit Corp., supra,* 102 Cal.App.4th 977 states in response to the same issue raised in that case: "No California court

has addressed the exact point, but courts from other jurisdictions consistently conclude that a dealer does not act as the financing agency's agent simply because the dealer used forms supplied by the financing agency. (E.g., *Pescia v. Auburn Ford-Lincoln Mercury Inc.* (M.D.Ala. 1999) 68 F.Supp.2d 1269, 1282; *Pope v. World Omni Financial Corp.* (Ala. 1992) 599 So.2d 15, 17.)" (*LaChapelle v. Toyota Motor Credit Corp., supra*, 102 Cal.App.4th at p. 992.) The *LaChapelle* court found both cases persuasive as they dealt with installment sales contracts for the purchase of vehicles persuasive. (*Ibid.*)

*Pescia v. Auburn Ford-Lincoln Mercury Inc., supra*, 68 F.Supp.2d 1269, stated: "The test for determining whether one is an agent of the defendant is whether the defendant has reserved the right of control over the means by which the work is done. Stated differently, the defendant must have reserved the right to direct not only what shall be done, but also how it shall be done." (*Id.* at p. 1282.) The court noted that the financial institution had instructed the dealer how to fill out the forms, had given the dealer access to its computer, and had directed the dealer to explain to the potential buyer her responsibilities under the installment sales contract. The financial institution had no contact with the buyer until after the assignment. The court concluded that the directions the financial institution had given to the dealer had no relationship to the wrongs alleged and therefore there was no agency. (*Id.* at p. 1283.)

In *Pope v. World Omni Financial Corp., supra*, 599 So.2d 15, the plaintiffs alleged the defendants had fraudulently induced them to enter various agreements for the purchase of a vehicle, insurance, and an extended warranty, based on statements by an employee of the dealer, but had no contact with the financial institution until after they entered the agreements. The court determined that the fact the financial institution approved the extension of credit and dictated the terms of the payments was insufficient to establish agency. (*Id.* at p. 17.)

Here, the bank did no more than the financial institutions in *Pescia* and *Pope*, and appellant fails to make any argument that would compel a different outcome.

### B. *The Second Case—Demurrer*

At the hearing on the demurrer, the trial court and counsel reviewed the procedural history of the second case, which appellant had filed after further discovery in the first case and the refusal of the court on the eve of trial to allow appellant to amend the first case to allege additional causes of action. The trial court sustained the bank's demurrer to the second case

without leave to amend and dismissed the action on the ground that the instant case was pending which involved the same matter "between the same parties." (See Code Civ. Proc., § 430.10, subd. (c).) The trial court indicated that if appellant prevailed on appeal of the summary judgment in the first case, it would be appropriate at that point to "move to add further causes of action because you have a complaint that has been resurrected." Appellant contends the trial court erred in sustaining the demurrer and dismissing the second case, and he requests remand for a reconsideration of attorney fees and costs in both cases.

The trial court properly sustained the demurrer. A review of the pleading in the second case discloses the same parties and the same transaction. The complaint includes the additional theories of liability of conspiracy and fraud and a request to enjoin the bank from perpetrating certain alleged acts. These additional theories are not "different wrongs" that give rise to different primary rights, as appellant claims, but rather are different ways of committing the same wrongs. (See discussion in *Brenelli Amedeo, S.P.A. v. Bakara Furniture, Inc.* (1994) 29 Cal.App.4th 1828, 1837-1838 [35 Cal.Rptr.2d 348].) We find no abuse of discretion by the trial court in sustaining the demurrer. (*G. L. Mezzetta, Inc. v. City of American Canyon* (2000) 78 Cal.App.4th 1087, 1091-1092 [93 Cal.Rptr.2d 292].)

## DISPOSITION

We affirm the summary judgment in case No. PC023097 and the judgment of dismissal in case No. PC025960. Reasonable attorney fees and costs are awarded to respondent on appeal.

Boren, P. J., and Nott, J., concurred.