In re RARE, LLC, Debtor.

Rare, LLC, Plaintiff,

v.

Paul Marciano and Armand
Marciano, Defendants.

Bankruptcy No. 03–14499 ABC.
Adversary No. 03–1403 HRT.

United States Bankruptcy Court,
D. Colorado.

Aug. 5, 2003.

Jeffrey Weinman, John C. Smiley, Patrick D. Frye, Lindquist & Vennum P.L.L.P., Denver, CO, for Debtor.

James S. Simko, Denver, CO, Joseph E. Shickich, Jr., John S. Kaplan, Seattle, WA, Lawrence D. Mishkin, Northbrook, IL, for Petitioning Creditors.

Paul G. Quinn, Denver, CO, for U.S. Trustee.

Steven T. Mulligan, Theodore J. Hartl, Jessop & Company, P.C., Denver, CO, for Creditor Committee.

### *ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION*

HOWARD R. TALLMAN, Bankruptcy Judge.

This case comes before the Court on Plaintiff's Motion for Preliminary Injunction (the "Motion") filed in connection with its Complaint which seeks a determination that Defendants have violated the automatic stay; injunctive relief; determination of a preferential transfer; and damages.

The Complaint and Motion for Preliminary Injunction were filed on May 1, 2003. On May 7, 2003, the Court held a hearing and, as a result of that hearing, issued a temporary restraining order to maintain the status quo until a fuller hearing on the merits of the Motion could take place. Beginning on July 14, 2003, and concluding the following day, the Court heard evi-

dence on the Motion. The Court finds that Plaintiff has demonstrated its entitlement to a preliminary injunction pending a trial of the merits of its Complaint.

Debtor's business is to act as a seller of fine wines and wine futures, primarily from the Bordeaux region of France. Defendants have a long history of doing business with Debtor and, pre-petition, had placed orders for wine futures with the Debtor. The time for delivery of the wines, which were subject to those futures, came and went. Defendants' subsequent inquiries and investigation revealed that Debtor had used the money collected from Defendants to actually pay for only a fraction of the futures which Debtor had ordered from its French suppliers pursuant to Defendants' requests. Debtor was unable to obtain delivery, even of wines which it had paid for, due to unpaid debts for other wines which it owed to the same wine merchants. Under pressure from Defendants, Debtor agreed to assist them in their efforts to obtain direct delivery of some of the wines which were still in the hands of the French merchants. To that end, Defendants have instituted legal proceedings in the French courts in an effort to obtain possession of wines in which Defendants claim an interest. Those proceedings were instituted pre-petition.

Subsequent to the filing of the bankruptcy petition, Defendants did not cause the ongoing proceedings in France to be stayed. Rather, Defendants allowed the legal process to continue and that process resulted in the post-petition seizure of wines which were the subject of the French legal actions. Defendants elected not to seek a lifting of the stay from this Court to allow their French legal actions to continue. They rely on the theory that their actions relate solely to property which is not property of the bankruptcy estate and, therefore, not subject to the automatic stay. In doing so, Defendants have taken it upon themselves to make the determination of what is and is not property of the bankruptcy estate. They did, and continue to do so, at their peril, for it lies within the exclusive province of the bankruptcy courts to determine what interests are part of the estate. 28 U.S.C. § 1334(e); *see, e.g., Manges v. Atlas (In re Duval County Ranch Co.)*, 167 B.R. 848, 849 (Bankr.S.D.Tex.1994) ("Whenever there is a dispute regarding whether property is property of the bankruptcy estate, exclusive jurisdiction is in the bankruptcy court.").

■ "To receive a preliminary injunction, the plaintiff must establish the following four factors: (1) a substantial likelihood of success on the merits of the case; (2) irreparable injury to the movant if the preliminary injunction is denied; (3) the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction; and (4) the injunction is not adverse to the public interest." *Salt Lake Tribune Pub. Co., LLC v. AT & T Corp.* 320 F.3d 1081, 1099 (10th Cir. 2003) (citing *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir.2001)).

### Likelihood of Success on the Merits

To evaluate the likelihood of Plaintiff prevailing over Defendants on the merits, the Court must assess the relative strengths of the opposing lines of argument.

Rare contends: 1) it has been named as a defendant in various lawsuits brought by the Marciano brothers in the French courts; 2) those lawsuits have caused the post-petition seizure of wines in which Rare claims an ownership interest; 3) the suits seek to adjudicate more than property rights, they also include contract disputes between Rare and Defendants; and 4) Defendants continued with those legal

actions, post-petition, after receiving notice of the bankruptcy filing.

Defendants argue that: 1) they established an agency relationship with Rare with respect to Rare's purchases of wines and futures on their account; 2) because of that agency relationship, Rare was a trustee for Defendants with respect to the rights which it acquired in certain wines and wine futures; 3) therefore, despite the fact that Defendants were complete strangers to the transactions to purchase wines and futures between Rare and the French agents, certain of the wines and wine futures purchased by Rare were, in fact, solely the property of Defendants and not property of the bankruptcy estate; 4) consequently, Defendants did not violate the automatic stay because the automatic stay is inapplicable.

Rare presented the testimony of Harvey Sender, Rare's manager, with respect to the nature of the legal actions pending in France against Rare. Mr. Sender testified that the lawsuits in France seek to adjudicate contract rights between the parties in addition to property interests in the wine. Rare also presented the Court with the deposition testimony of Francois Ruffie, an attorney for Hebrard, a French wine broker. He also testified that the French legal actions involve contract issues and seek monetary relief in addition to the determination of possessory rights with respect to the wines. Defendants presented no testimony or documentary evidence which contradicted that testimony. Neither party sought to introduce translations of the legal pleadings which may have been helpful to the Court in evaluating the parties' claims on this point.

Defendants, for their part, presented no evidence going to the establishment of an agency relationship or a fiduciary relationship between themselves and Rare. They argue that point extensively in their trial brief, but treat the agency relationship as a given rather than the fact-intensive inquiry that it is. *Stortroen v. Beneficial Finance Co.*, 736 P.2d 391, 395 (Colo.1987) (en banc) ("The existence of an agency relationship is ordinarily a question of fact.").

■ Under Colorado law, "[a]n agency is a 'fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'" *City and County of Denver v. Fey Concert Co.*, 960 P.2d 657, 660 (Colo.1998) (en banc) (quoting HAROLD GILL REUSCHLEIN & WILLIAM A. GREGORY, THE LAW OF AGENCY AND PARTNERSHIP § 2, at 4 (2d ed.1990)); *Stortroen*, 736 P.2d at 395; *see also* RESTATEMENT (SECOND) OF AGENCY § 1(1).

Choice of law issues were not addressed by the parties, but it is unnecessary for the Court to determine whether Colorado or California law applies to determine whether an agency relationship exists. Agency is defined by California's Civil Code as: "[a]n agent is one who represents another, called the principal, in dealings with third persons. Such representation is called agency." Cal. Civ.Code § 2295. The all-important element of the principal's control over the activities of the agent is addressed in California's case law. *See, e.g., Bescos v. Bank of America*, 105 Cal. App.4th 378, 129 Cal.Rptr.2d 423, 435 (2003) (quoting *Pescia v. Auburn Ford–Lincoln Mercury, Inc.*, 68 F.Supp.2d 1269, 1282 (M.D.Ala.1999)) ("The test for determining whether one is an agent of the defendant is whether the defendant has reserved the right of control over the means by which the work is done. Stated differently, the defendant must have reserved the right to direct not only what shall be done, but also how it shall be done.").

It is not enough merely that Defendants asked Plaintiff to purchase wine and futures on their behalf and that Plaintiff undertook to do so. The element of control of the principal over the activities of the agent is key to the establishment of the legal relationship of agency. *See, Fey Concert Co.*, 960 P.2d at 657, 660–61 (based on lack of control of the purported principal over the manner in which Fey carried out his obligations, this court reversed the lower court finding of an agency relationship); *Gorsich v. Double B. Trading Co., Inc.*, 893 P.2d 1357, 1361 (Colo.Ct.App. 1995) ("The most important factor in determining whether a person is an agent is 'the right to control, not the fact of control' ") (quoting *Moses v. Diocese of Colorado*, 863 P.2d 310, 324 (Colo.1993)). To set the bar for finding an agency as low as Defendants would have this Court set it would mean that every time a person enters into an agreement to perform some service for another, that agreement would create a principal-agent relationship. Thus, virtually every commercial transaction would entail an agency relationship with all of the attendant legal consequences and fiduciary duties.

The record is devoid of evidence that Defendants reserved the right to exercise control over the activities of Plaintiff beyond placing orders with Rare and looking to it to perform its contractual obligations. Thus, there is nothing before the Court that can justify a claim that a principal and agent relationship existed between the Marcianos and Rare. The Court has seen no evidence that the relationship was anything other than that of a vendor to a vendee. *See, e.g., McGeorge v. Continental Airlines, Inc.*, 871 F.2d 952 (10th Cir. 1989) (Airline which caused police officer to remove the plaintiff from one of its planes could not be held liable, as principal of the officer, because airline lacked control over the officer's actions to give

rise to an agency relationship.); *Happy Indus. Corp. v. American Specialties, Inc.*, 983 S.W.2d 844 (Tex.Ct.App.1998) (Despite local distributors' claims that they acted as agents for overseas manufacturer of commercial equipment, "[t]he evidence [did] not show [the manufacturer] had the right to assign tasks to either [distributor] and to control the means and details of the process by which [the distributors] would accomplish any tasks." Thus, the court rejected the claim of agency.); *Locate.Plus.Com v. Iowa Dep't of Transportation*, 650 N.W.2d 609 (Iowa 2002) (Despite the fact that vendor had its customers sign a document which designated the vendor as their agent, in order to allow it to buy driver's license information from the state, the court found that the vendor was not subject to the control of its customers and did not act on their account. The relationship was simply one of buyer and seller, not principal and agent.); *Sea Link Int'l, Inc. v. Osram Sylvania, Inc.*, 969 F.Supp. 781 (S.D.Ga. 1997) (bulk purchaser of auto parts assemblies lacked requisite control over operations of its intermediate supplier to make it responsible, as principal, for the supplier's breach of its contract with the downstream manufacturer); *Martin Coin Co. v. King*, 665 S.W.2d 939, 942 (Mo.1984) (The court rejected claim of coin dealer that it acted as an agent for its customers when it took orders from its customers and then located suppliers to fill the orders.); *Wood Chevrolet Co. v. Bank of the Southeast*, 352 So.2d 1350 (Ala.1977) (An auto dealer which supplied autos to a bankruptcy marketing organization sought to collect the debt owed by that organization from the customers who had ordered and taken delivery of the cars. The court found that the customers exercised no right of control over the activities of the marketing organization and were not principals of the

organization who could be held to account for its debts); *Chicago, R.I. & Pa. Ry. Co. v. Ferguson,* 3 Colo.App. 414, 33 P. 684 (1893) (Property owners could not hold railway company liable, as principal, for the trespass of its contractor because it lacked the required degree of control over the contractor's operation to establish a principal-agent relationship.).

Defendants also point to section 2–501 of the Uniform Commercial Code to bolster their argument that the wine at issue is their sole and exclusive property. That reliance is misplaced. Both the Colorado and California versions of UCC § 2–501 provide that a buyer obtains an insurable interest and a "special property" upon identification of the goods to the contract. Although the Court questions whether the wines at issue were ever identified to the contract within the meaning of the UCC, the Court need not grapple with that issue.

The "special property" acquired under UCC § 2–501 does not pass title to the buyer nor does it create the kind of trust relationship which might take the property out of the purview of § 541(a) of the Bankruptcy Code. The "special property" which a buyer acquires under UCC § 2–501 does nothing more than trigger certain rights to recover the goods under UCC § 2–502. This right of recovery is analogous to a secured creditor who holds a right of recovery of its collateral under state law prior to the filing of a defaulting debtor's bankruptcy petition. In the case of the secured creditor, that right of recovery does not remove property from the bankruptcy estate such that the automatic stay is inapplicable. At best, it may form the basis for obtaining a lift of stay. Just as a secured creditor, who had filed its replevin action pre-petition, cannot proceed to prosecute that action and obtain possession of a debtor's property without obtaining a lift of the automatic stay, a buyer who holds

nothing more substantial than an insurable interest or the "special property" acquired through UCC § 2–501 cannot enforce those rights without first obtaining a lift of stay from the bankruptcy court. But that is the substance of Defendants' argument in this case. They argue that they did nothing more than pursue their rights under UCC § 2–502. But since their "rights" under UCC § 2–502 consist of nothing more than the right to bring a legal action to recover property, the Court reads 11 U.S.C. § 362(a)(3) to prohibit the exercise of those rights absent the granting of a modification of the automatic stay.

Defendants also argue that a negative inference may be drawn from language on the Rare invoice which establishes that they obtained title to the wines pre-petition, so that § 362 is inapplicable. Rare's invoices to its customers contains the following statement:

**PAYMENT TERMS:**
**Title to all goods supplied by us shall remain with us until all sums due to us from the buyer have been paid.**
Defendants would have the Court interpret that language as an explicit agreement between the parties that title passes to the buyer prior to actual delivery of the goods.

In the absence of such an explicit agreement, UCC § 2–401 dictates when title to goods passes to a buyer. "Unless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods . . . ." Colo. R. Stat. § 4–2–401; Cal. Com.Code § 2401. The Court reads the language in the Rare invoice not to be an explicit agreement as to the time that title passes to Rare's buyers, such as contemplated under UCC § 2–401. The Court reads the language to be nothing more than a statement that the earliest time

title might pass is when all contract amounts have been paid. It does not overcome the presumption that title passes in accordance with UCC § 2–401.

In addition, Mr. Sender testified, without contradiction, that, even though the cost of the wine futures may have been paid for months or years before the wine is actually bottled, there are bottling, labeling and other charges that must be paid, and which are the customer's ultimate responsibility, before the wine will be shipped. Consistent with Mr. Sender's testimony, the series of Rare invoices from 1999 which Defendants submitted as part of Exhibit 122 contain the notation: "Shipping charges for Futures billed at time of delivery." Mr. Ruffie also alluded to those additional charges in his testimony. Thus, even if the Court did read the language on the Rare invoice in the manner that Defendants urge, there is not enough evidence before the Court for it to conclude that all of those ancillary charges had been paid, pre-petition, such that title had passed in accordance with Defendants' interpretation of that language.

■ Defendants argue in their brief that they win on the merits because "actions taken before the bankruptcy petition are not subject to the automatic stay." Apparently, Defendants believe that because they commenced their legal actions pre-petition, and have taken no affirmative post-petition steps concerning those legal actions, that they cannot be held accountable for their failure to insure that those actions were suspended after they received notice of Rare's bankruptcy filing. It is quite clear that creditors are liable for sanctions under § 362(h) for violation of § 362(a)(3) where they refuse to turn over property that was legally seized, pre-petition, after receiving notice of the bankruptcy filing. *Cal. Employment Dev. Dept. v. Taxel (In re Del Mission Ltd.)*, 98 F.3d 1147, 1151 (9th Cir.1996); *Knaus v. Concordia Lumber Co., Inc. (In re Knaus)*, 889 F.2d 773, 774–75 (8th Cir.1989); *In re Berscheit*, 223 B.R. 579, 581 (Bankr. D.Wyo.1998). This Court does not perceive any principled difference between retention of property which was legally seized prior to a bankruptcy filing and the failure to stay a proceeding which was legally instituted, pre-petition, and which leads to a post-petition seizure. If anything, the later would appear to be the more egregious violation.

At a previous proceeding, Defendants' counsel made the statement that, while Defendants may have started the boulder rolling down the hill pre-petition, they had done nothing to help it along its way after the filing of the bankruptcy. Be that as it may, that fact does not immunize the Defendants from bearing the responsibility for whatever carnage their boulder may cause at the bottom of the hill.

■ Finally, Defendants argue that the anti-suit injunction doctrine prohibits this Court from entering any injunction against a foreign court or against parties participating in a foreign proceeding.

Of course, the automatic stay injunction arises, not by any action of this Court, but by operation of statute upon the filing of a bankruptcy petition. This Court's duty is to enforce that statutory injunction and it is committed to doing so. In essence, if this Court should refrain from enforcing the automatic stay, then Rare's right to reorganize under Chapter 11 is effectively eviscerated. This case does not present the kind of issues that would make the anti-suit injunction doctrine a real issue. After all, the Marcianos are American creditors of an American Debtor in an American bankruptcy proceeding.

The Court is not insensitive to the interests of comity in the context of transna-

tional insolvency proceedings. However, invocation of the anti-suit injunction doctrine in the present case goes to the very heart of the Court's jurisdiction. There can be no question of this Court's jurisdiction over all of the Debtor's property interests whatever those interests are and wherever they are located. 28 U.S.C. § 1334(e); 11 U.S.C. § 541; *Hong Kong and Shanghai Banking Corp., Ltd. v. Simon (In re Simon)*, 153 F.3d 991, 996 (9th Cir.1998). The automatic stay is fundamental to the exercise of that jurisdiction. *Washington v. Hale (In re Washington)*, 146 B.R. 807, 809 (Bankr.E.D.Ark.1992). Whatever comity interest may exist in this case does not overcome this Court's interest in maintaining its jurisdiction. If this Court cannot maintain control over the Debtor's property, then, as a practical matter, the Debtor loses its opportunity to attempt a reorganization.

This Court has not been asked to make determinations, under French law, as to the security rights that the French suppliers may claim in wines which they possess, or to make any other legal determination of French law. The only issue the Court has been asked to address is whether the automatic stay is applicable to property interests which were created in this country between citizens of this country. The interest of the French courts in adjudicating a matter that, at its core, is a dispute between American citizens is minor compared to the interest of this Court in determining the applicability of the automatic stay which is the very cornerstone of this Court's jurisdiction.

■ In the Tenth Circuit, a plaintiff's burden with respect to demonstrating likelihood of success on the merits is not to prove that it is certain to prevail at trial. It "'will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and

doubtful as to make them a fair ground for litigation and thus for more deliberate investigation.'" *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980) (quoting *Continental Oil Co. v. Frontier Refining Co.*, 338 F.2d 780, 781–82 (10th Cir.1964)). Rare has carried that burden.

### Irreparable Injury to the Movant if the Preliminary Injunction is Denied

■ The Court rejects the Defendants' argument that the risk of injury to Plaintiff in this matter is speculative and, therefore, Plaintiff cannot demonstrate irreparable injury. The uncontroverted testimony of Mr. Sender was to the effect that, but for the Marciano's seizure of the wines in the French court actions, two French wine merchants, Thunevin and Vins Sur 20 are holding wines that are fully paid for and ready to be shipped to the Debtor.

It is clear that this is a unique product which the Debtor cannot necessarily obtain from other sources. Even if it could, it would lose the benefit of its bargain to obtain the wines at its contract price. According to Hebrard's counsel, Mr. Ruffie, wines of that 2000 vintage are appreciating substantially in value. If the Debtor does not get to take delivery of the wines which it has purchased, it loses a very substantial profit opportunity. The Court is satisfied that the Debtor would suffer irreparable harm if the apparent violations of the automatic stay are not enjoined.

### The Threatened Injury to the Movant Outweighs the Injury to the Other Party under the Preliminary Injunction

■ The evidence currently before the Court is to the effect that the Marcianos seek to obtain these wines in order to supplement wine collections which are maintained for personal and family use. Debtor, on the other hand, seeks to obtain

them as part of its efforts to rehabilitate the Debtor's business enterprise.

It is apparent that the wines which are at issue here represent only a fraction of the wines that Defendants have ordered and paid for. They are significant to Defendants, not only because they are the only tangible property which Defendants might lay claim to, but also because of their unique character. Even if the Marcianos recover these wines, the vast majority of the debt owed to the them by Rare would inevitably have to be addressed as a claim against the Debtor's bankruptcy estate. Thus, the Court cannot doubt that the harm which has accrued to the Marcianos, prior to the filing of this bankruptcy case, is extraordinary indeed.

However, in the context of the issue that is currently before the Court, it must take a narrower view. The Court must limit its focus strictly to the wines that are at issue. The duty of the Court in the current context is to balance the interest of individuals in supplementing their wine collections as opposed to the loss of a business opportunity to an enterprise which is attempting to reorganize. Under the circumstances, the Court must find the interest in the reorganization effort to be paramount.

It is clear that the ability to sell these wines is worth approximately $350,000.00 to the Debtor. In the context of Debtor's current business, that is a significant sum and the Court believes that its loss would severely hamper Debtor's reorganization efforts. In the balancing between the two interests, the Court is convinced that a significant loss of revenue to Rare, at this stage of its reorganization effort, is a more severe consequence than the effect that the Court's injunction will have on the Defendants' wine collections.

### The Injunction Is Not Adverse to the Public Interest

The Court is not being asked to create a brand new restriction on Defendants' activities—either at this preliminary stage or in its final decision on the merits of the complaint. Defendants are already bound by the injunction of the automatic stay. The Court's ultimate duty is to determine if that injunction has been violated and, if so, whether that violation is worthy of being assessed a monetary sanction. In a very real sense, then, the preliminary injunction that the Court issues today does nothing more than emphasize the duty which Defendants are already under.

That said, the Court believes that the preliminary injunction the Court is being asked to enter is hardly adverse to the public interest. The public interest would not be served by this Court's refusal to enforce the will of Congress as expressed through the Bankruptcy Code.

### CONCLUSION

Defendants' counsel pointed out in closing argument that Defendants had been extremely careful to observe the precise letter of the TRO which was entered in this matter. While exercising care to observe the TRO, Defendants may have overlooked a critical fact. Any temporary or preliminary injunctive relief that the Court may grant prior to the final hearing of this complaint is *in addition to, not in place of,* 11 U.S.C. § 362. Defendants have never deemed it prudent, even as a precautionary measure, to request relief from the automatic stay in this case. Consequently, regardless of what action the Court takes with respect to preliminary injunctive relief, Defendants remain fully bound by 11 U.S.C. § 362 and all of the case law interpreting that statute. If the Court should ultimately find that Defendants have violated § 362, a hypertechnical compliance with the precise wording of the TRO or the Preliminary Injunction is likely to be cold comfort. The issue before

the Court is whether a violation of § 362 has occurred and, if so, whether that violation should be sanctioned.

Plaintiff has carried its burden to demonstrate its entitlement to a preliminary injunction in this matter. Therefore, it is

**ORDERED** that Plaintiff's Motion for Preliminary Injunction is hereby GRANTED and the Court directs the Plaintiff to submit a proposed form of order for the preliminary injunction to be entered pursuant to the foregoing opinion.